In the Matter of PARK EAST LAND CORP., Respondent, against MAURICE FINKELSTEIN et al., Constituting the Temporary City Housing Rent Commission of the City of New York, Appellants.

Argued February 23, 1949; decided April 14, 1949.

*Alfred Weinstein, Joseph Jay, Seymour R. Thaler* and *Nathan W. Math* for appellants. I. When a violation of a tenancy obligation causes no legitimate loss, damage, or prejudice, it is not unreasonable to deny a certificate of eviction. (*Matter of Marburg* v. *Cole,* 286 N. Y. 202; *National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S. 111; *Rochester Tel. Corp.* v. *United States,* 307 U. S. 125; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Matter of Agoglia* v. *Mulrooney,* 259 N. Y. 462; *Matter of Pruzan* v. *Valentine,* 282 N. Y. 498; *Matter of Stracquadanio* v. *Department of Health,* 285 N. Y. 93; *People* v. *Ryan,* 274 N. Y. 149; *Wiley* v. *Solvay Process Co.,* 215 N. Y. 584; *Rosen* v. *370 West 35th St. Corp.,* 184 Misc. 172; *Matter of Delaney* v. *Ross,* 274 App. Div. 8; *Matter of Annsing Properties* v. *Finkelstein,* N. Y. L. J., Oct. 13, 1948, p. 770, col. 2; *Matter of Goodman* v. *Ross,* 274 App. Div. 811; *Matter of Atkin* v. *Finkelstein,* N. Y. L. J., July 27, 1948, p. 151, col. 3, 274 App. Div. 916; *Matter of Reinertsen* v. *Finkelstein,* N. Y. L. J., June 10, 1948, p. 2193, col. 2.) II. Since landlord was not prejudiced by tenant's violation of an obligation of the tenancy, a certificate of eviction was properly denied. (*Matter of Annsing Properties* v. *Finkelstein,* N. Y. L. J., Oct. 13, 1948, p. 770, col. 2; *Matter of Guarino* v. *Finkelstein,* 274 App. Div. 904.)

*Richard M. Monfried* and *Emanuel L. Kayman* for respondent. I. The facts establish a violation of a substantial obligation of the tenancy. (*Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Royce Haulage Corp.* v. *Bronx Term. Garage,* 185 Misc. 892; *130 West 57 Corp.* v. *Hyman,* 188 Misc. 92; *Shelton Bldg. Corp.* v. *Baggett,* 188 Misc. 709; *Glauberman* v. *University Place Apts.,* 188 Misc. 277, 272 App. Div. 758; *Matter of Delaney* v. *Ross,* 274 App. Div. 8; *Axelrad* v. *Axelrad,* 180 Misc. 418; *Davin* v. *Davin,* 114 App. Div. 396.) II. Since the facts were conceded, the rent commission should have applied existing law and a certificate of eviction should have been issued.

(*130 West 57 Corp.* v. *Hyman,* 188 Misc. 92; *Matter of Skeels* v. *Paul Smith's Hotel Co.,* 195 App. Div. 39; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256.)

FULD, J. The New York City Eviction Law, relating to tenancy of residential apartments, has the declared objective " of alleviating the present housing emergency and preventing abuses " (Administrative Code of City of New York, § U41–7.0, subds. a, c; Local Laws, 1947, No. 66 of City of New York). To that end the law prescribes that a tenant may not be ousted by court proceedings from any apartment as long as he pays rent, unless the Temporary City Housing Rent Commission first certifies that an authorized ground for eviction exists. There are but four grounds specified, all narrow and circumscribed in their scope. One of them, as clarified by a commission regulation (Regulation II, art. II, § 5), is to the effect that the commission may issue a certificate of eviction if the tenant " is violating a substantial obligation of his tenancy ". Whether or no there has been a violation of such an obligation is the question for determination.

In 1941, the landlord's predecessor leased a two-room apartment in The Bronx to Bennie Bell, whose family consisted of himself, his wife and his son. The lease, in addition to containing covenants against assignment and subletting, restricted use and occupancy of the apartment to members of the tenant's " immediate family ". It was further specified that these covenants constituted " an especial consideration " for the lease and that their violation entitled the landlord to terminate the tenancy. By periodic renewals, the lease, with its covenants, was extended to August 31, 1946. Upon its expiration, the landlord served notice upon Mr. Bell that, if he remained in occupancy beyond that date, he would be regarded as a " statutory monthly Tenant ". He chose to do so and his occupancy thereafter was " by virtue of a compulsion exerted * * * by the local emergency rent law ". (*Whitmarsh* v. *Farnell,* 298 N. Y. 336, 343.)

Mr. Bell died not long afterward, and his widow and son continued on in the apartment. In November, 1947, Mrs. Bell married a Mr. Alper and joined him in premises which he had been occupying. Mr. Alper's daughter and son-in-law, who had apparently been living with him, moved into the apart-

ment with the Bell boy, planning to remain but for a temporary period, and paid no rent either to the mother or to the son.

The landlord, contending that statutory tenants are " bound by all of the terms and covenants of the leases under which they previously occupied " and alleging a violation of a " substantial obligation " of the tenancy, applied to the commission for an eviction certificate. After a hearing, the commission denied the certificate, asserting that the landlord failed to establish the violation of " a substantial obligation of the tenancy ", and the court at Special Term confirmed that determination in this article 78 proceeding. Upon appeal, the Appellate Division reversed and ordered that the certificate be granted.

The commission concedes that the covenant restricting occupancy to Mr: Bell's immediate family is projected into the statutory tenancy as a term thereof, and we proceed upon that hypothesis. With that restriction effective, the tenants were guilty of a violation, for manifestly a stepdaughter and a stepson-in-law of Mr. Bell's remarried widow may hardly be considered as his own kith and kin. Deviation being established, the question for the commission was whether it was of a type which warranted the granting of an eviction certificate. We agree with the determination that it was not.

We are confronted, at the outset, with the problem of defining the commission's function in this matter, and of ascertaining the extent of permissible judicial review. The statute itself provides no explicit answer. As we have seen, its relevant portions, as authoritatively interpreted by the commission, provide only that no proceeding to evict shall be brought by a landlord unless the commission certifies that the tenant is violating a substantial obligation of his tenancy.

" Substantial " is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs. (Cf. *Steel Storage & Elevator Constr. Co.* v. *Stock*, 225 N. Y. 173, 179.) Although there are certainly instances where application of such a term poses questions of statutory construction — a matter for the courts — that is not true here. There is no necessity for the courts to formulate, case by case, a completely inclusive and exclusive definition

of what constitutes violating a " substantial obligation " of the tenancy; that task is left to the commission, the agency administering the local rent laws. In the functioning of that body, " substantial " constitutes a flexible guide for the exercise of its discretion to grant or withhold an eviction certificate. Applied in that manner, the word has an intelligible connotation, a meaning consistent with the design of the emergency legislation.

These considerations persuade us that the courts have but a limited part to perform in reviewing the commission's conclusion that the obligation here involved was not substantial. Such a determination, arrived at by " specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially ", is not to be disturbed by the courts if it has " warrant in the record ", " a reasonable basis in law " and is neither arbitrary nor capricious. (See *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104, 108; *Matter of Fiore* v. *O'Connell,* 297 N. Y. 260, 262; *Matter of Marburg* v. *Cole,* 286 N. Y. 202, 214; *Matter of Agoglia* v. *Mulrooney,* 259 N. Y. 462.) The " judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ". (*Matter of Mounting & Finishing Co.* v. *McGoldrick, supra,* at p. 108.)

That there was justification in the record and a reasonable basis in the law for the commission's determination, that it was neither arbitrary nor capricious, may not be seriously disputed.

Whether or no strict adherence to technical concepts of landlord and tenant law would have justified eviction under ordinary conditions in ordinary times, need not detain or concern us. It is enough to say that, in the housing field at least, these are not ordinary times. If anything is clear, it is that mechanical application of common-law rules will not promote reasonable decision in cases controlled by emergency rent legislation. Concededly, the commission would have been justified in denying a certificate of eviction if Mr. Alper had joined his new wife and her son in their apartment, or if the son had married and brought his bride to live with him and his mother, and the present case is not essentially dissimilar. The landlord established no sig-

nificant departure from the obligation of the tenancy nor any loss or damage to itself. (Cf. *Matter of BCC Holding Corp.* v. *Coster,* 194 Misc. 537.) Of the three persons who originally occupied the apartment, one remains and the stay of the two additional occupants is assertedly temporary. Even on the landlord's own allegation, no increase in the total number of tenants, no increase in the landlord's burdens or costs, no increase in wear and tear upon facilities, are shown. The son is ready to pay the rent prescribed, and no claim is made that the landlord will be receiving less than it could obtain from new tenants. Beyond that, there is not even a suggestion that the premises are being illegally used, or that, under the guise of a good faith tenancy, the space is being sublet or rerented.

In short, the asserted violation is of a purely technical nature, causing the landlord no actual loss, affording the occupant no profit or commercial advantage. Manifestly, ample evidentiary and equitable basis exists for the commission's determination that the certificate of eviction be denied. (See, e.g., *Piankay Realties* v. *Romano,* 296 N. Y. 920, affg. 271 App. Div. 104; *Matter of Goodman* v. *Ross,* 274 App. Div. 811; *Matter of Delaney* v. *Ross,* 274 App. Div. 8.) While the *Piankay* case (*supra*), did not involve an application for the issuance of an eviction certificate, its facts are analogous, its rationale persuasive. The landlord sought an injunction to enforce a covenant in the tenant's lease which restricted use of the premises to " manufacturing and repairing of Custom Made Furniture." Because of wartime shortages, the tenant was unable to continue in that business and turned to the manufacture of wooden or plastic picture frames and pocketbook frames. The Appellate Division refused to grant an injunction, resting its decision — which we affirmed — upon the ground that the landlord had " not shown any undue or increased burden or strain on the building facilities, or that its costs for insurance or operations " were increased, or that it was " prejudiced in any way by the added use " (271 App. Div., at pp. 105–106). We find that reasoning both apt and cogent here.

Reference to the rent law itself confirms our conclusion. The firm command of Local Law No. 66 is that no rent-paying tenant shall be evicted. The exceptions enumerated are designed, it is clear, to prevent extreme hardship and inequity

to the landlord, inconvenience to other tenants or outright illegal action by the tenant, in the course of effectuating that mandate. There is no need to repeat that none of those extraordinary elements are present in this case; on the contrary, denial of the certificate of eviction has furthered the rent law's underlying purpose and objective.

The order of the Appellate Division should be reversed, and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and BROMLEY, JJ., concur.

Order reversed, etc.