In the Matter of JOHN HEISSENBUTTAL et al., Respondents, against CHARLES ABRAMS, as State Rent Administrator, Appellant, and ROBERT WORTMAN et al., Intervenors.

Second Department, November 21, 1955.

*Beatrice Shainswit* and *Hortense W. Gabel* for appellant.

*Henry M. Feldschuh* for respondents.

*Per Curiam.* In a proceeding pursuant to article 78 of the Civil Practice Act to review a determination of the State Rent Administrator conditionally granting applications for certificates to evict respondents, the State Rent Administrator appeals from an order annulling his determination.

The landlords, intervenors in this proceeding, own a twenty-five-family building, forty or fifty years old, containing no central heating or hot water systems. They filed applications with the local rent administrator in Brooklyn, in accordance with Bulletin No. 170 of the Temporary State Housing Rent Commission, for prior opinions as to the rental increases that would be permitted for the installation of central heating and central hot water systems, the replacement of the old plumbing with new brass plumbing and the replacement of the toilet tanks with new flushometers. Estimates from contractors accompanied the applications. The tenants were notified of these applications and the general tenor of their answers was that they could not afford the rental increases that would be involved and therefore did not want, and opposed, the improvements.

The orders granting the so-called prior opinions permitted substantial increases, conditioned upon the completion of the " rehabilitation or major capital improvements set forth in the application," the actual expenditure of the sums involved, and a further application by the landlords.

The work was commenced by the landlords but they could not complete it because some of the tenants would not permit access to their apartments to the mechanics for the purpose of such work. The landlords then applied for certificates to evict respondents, based on such refusals. The majority of the tenants filed answers objecting to the improvements. The local rent administrator denied the applications on the ground that the requested evictions were inconsistent with the purposes of the State Residential Rent Law (L. 1946, ch. 274, as amd.) and the State Rent and Eviction Regulations, and would be likely to result in the circumvention or evasion thereof.

The landlords protested to the State Rent Administrator and the answering tenants stated that their opposition to the landlords' action was predicated solely upon the ground that they were not in a financial position to pay the rent increases; that they were not opposed to the improvements per se. The State Rent Administrator held that the landlords were entitled to access for the purpose of making the improvements and directed the issuance of certificates of eviction with provisos therein rendering them void if the tenants permitted access for the purpose of making the specified improvements. Special Term annulled that determination.

In part, the purposes of the housing rent law are to provide for a " transition from regulation to a normal market of free bargaining between landlord and tenant," to be administered with due regard to the national emergency, and to prevent uncertainty, hardship and dislocation (State Residential Rent Law, § 1). The Temporary State Housing Rent Commission " may from time to time to effectuate the purposes of this act adopt, promulgate, amend or rescind such rules, regulations or orders as it may deem necessary or proper for the control of evictions." The " regulations shall be designed to maintain a system of rent controls at levels which, in the judgment of the commission, are generally fair and equitable and which will provide for an orderly transition from and termination of emergency controls without undue dislocations, inflationary price rises or disruption." The commission may grant a certificate of eviction " where it finds that the requested removal or eviction is not inconsistent with the purposes of this act and would not be likely to result in the circumvention or evasion thereof ". (State Residential Rent Law, §§ 4, 5.)

The housing rent law, as amended by chapter 443 of the Laws of 1951, permitted rent adjustments when " the landlord and tenant by mutual voluntary written agreement, subject to the

approval of the commission, agree to a substantial increase or decrease in dwelling space or a change in the services, furniture, furnishings or equipment provided in the housing accommodations; or there has been, since March first, nineteen hundred fifty, an increase in the rental value of the housing accommodations as a result of a major capital improvement required for the operation, preservation or maintenance of the structure, or in structures containing more than four housing accommodations, made with the express consent of the tenants in occupancy of at least seventy-five per centum of the housing accommodations, provided, however, that no adjustment granted hereunder shall exceed fifteen per centum unless the improvement was made with the consent of the tenants, as herein provided ''. (State Residential Rent Law, § 4, subd. 4, par. [a], cl. [5].) At that time there was no direct provision for rent adjustments in such a building for major capital improvements made against the will of the majority of the tenants unless they were required for the operation, preservation or maintenance of the structure.

By section 1 of chapter 321 of the Laws of 1946, dwellings such as the one herein were declared to be substandard.

By chapter 302 of the Laws of 1952, the Temporary State Commission to Study Rents and Rental Conditions was required to report to the Legislature by March 31, 1953, the result of its study and to include as part thereof proposals for such legislation as it deemed necessary to effectuate its findings.

That commission, of which the person who comprised the Temporary State Housing Rent Commission (and who was also the State Rent Administrator), was a member (State Residential Rent Law, § 3, subd. 1) submitted its report on March 5, 1953.

That report recognized the conflict between landlords and tenants and the deterioration in substandard tenements due to failure to make necessary repairs. *Inter alia,* it recommended the enactment of legislation to permit the '' Commission to provide for increased rentals due to a substantial rehabilitation of the building or housing accommodation therein which adds to the value of the property and increases the rental value, and removes the present fifteen per cent limitation on capital improvements required for the operation, preservation or maintenance of the structure ''. (N. Y. Legis. Doc., 1953, No. 43, p. 19.)

The housing rent law was amended by chapter 320 of the Laws of 1953 to permit rent adjustments when '' (5) the landlord and tenant by mutual voluntary written agreement, subject to the approval of the commission, agree to a substantial increase or

decrease in dwelling space or a change in the services, furniture, furnishings or equipment provided in the housing accommodations; or (6) there has been, since March first, nineteen hundred fifty, an increase in the rental value of the housing accommodations as a result of a substantial rehabilitation of the building or housing accommodation therein which materially adds to the value of the property or appreciably prolongs its life, excluding ordinary repairs, maintenance and replacements; or (7) there has been since March first, nineteen hundred fifty a major capital improvement required for the operation, preservation or maintenance of the structure; or (8) there has been since March first, nineteen hundred fifty in structures containing more than four housing accommodations, other improvements made with the express consent of the tenants in occupancy of at least seventy-five per centum of the housing accommodations, provided, however, that no adjustment granted hereunder shall exceed fifteen per centum unless the tenants have agreed to a higher percentage of increase, as herein provided ''. (State Residential Rent Law, § 4, subd. 4, par. [a], cls. [5], [6], [7], [8]; see, also, L. 1953, ch. 321.)

It will be observed that there is no provision therein requiring the consent of tenants when there has been a substantial rehabilitation '' excluding ordinary repairs, maintenance and replacements '' or a '' major capital improvement required for the operation, preservation or maintenance of the structure '', but that consent of seventy-five per centum thereof is required in the case of other improvements.

Immediately upon the enactment of the legislation in 1953, the State Rent Administrator publicly announced that the new law permitted a landlord, without the consent of 75% of the tenants to rehabilitate a cold-water, heatless tenement by the installation of central heating and hot water systems and to obtain proper rental increases based on such installations (N. Y. L. J., April 1, 1953, p. 1076, col. 1). A specified procedure was set up whereby the landlord could request a prior opinion concerning a proposed substantial rehabilitation or major capital improvement, describing the proposed improvements and filing cost estimates for the changes. The tenants were to be notified and the order issued could be protested. The State Rent Administrator stated that in the second proceeding, to be instituted after the completion of the work, the only issue to be determined was whether the work was substantially completed. (Bulletin No. 170 of the Temporary State Housing Rent Commission.)

The installation of central heating and hot water systems in the premises involved is not a major capital improvement that is at present required for the " operation, preservation or maintenance of the structure " although the erection of such a multiple dwelling, without a central heating system, has been forbidden in New York City since 1929 (Multiple Dwelling Law, § 79). Respondents argue that such an installation, where none existed before, is not " rehabilitation." The State Rent Administrator has determined it is.

The interpretation of the housing rent law and of the State Rent and Eviction Regulations by the State Rent Administrator is entitled to great weight (*Leighton* v. *Bearman,* 278 App. Div. 72, affd. 302 N. Y. 865), especially when a statutory amendment is based on a report and recommendation that he was required by statute to furnish. (*Matter of Present* v. *McGoldrick,* 279 App. Div. 1010; *Matter of Wisotsky* v. *McGoldrick,* 279 App. Div. 1011, affd. 304 N. Y. 619.)

When the interpretation or construction of the word " substantial," as involved in an alleged violation of a " substantial obligation " of a tenant, was before a rent commission, the court held that such a word was one of general reference which took on color and precision from its total context and must be defined with reference to the peculiar legal and factual setting in which it occurred. It was stated that such a " determination, arrived at by ' specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially ', is not to be disturbed by the courts if it has ' warrant in the record ', ' a reasonable basis in law ' and is neither arbitrary nor capricious.  *  *  *  The ' judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body '. (*Matter of Mounting & Finishing Co.* v. *McGoldrick* [294 N. Y. 104], *supra,* at p. 108.) " (*Matter of Park East Land Corp.* v. *Finkelstein,* 299 N. Y. 70, 75.)

It has been held that the conversion from a coal-fired furnace to an automatic oil-fired system in an apartment house is not such a substantial rehabilitation, " excluding ordinary repairs, maintenance and replacements " or " major capital improvement required for the operation, preservation or maintenance of the structure " as necessitates an adjustment in rents based upon the conversion (*Matter of Lubitz Bros.* v. *Abrams,* 286 App. Div. 871, motion for leave to appeal denied 286 App. Div. 968). But in that case the conversion gave no benefit to the tenants to which they were already not entitled and was appar-

ently for the convenience of the landlord. Here the installation of heat and hot water would benefit the tenants and increase the rental value of the apartments and materially add to the value of the premises. The premises now are substandard (L. 1946, ch. 321, § 1).

The installation of central heating and hot water systems, where none existed before, can be said to furnish or equip these premises with suitable means which restore them to a good standard condition. They will be substantially rehabilitated. (See definitions of "habilitate" and "rehabilitate", Funk & Wagnalls College Standard Dictionary [1941 ed.]; Webster's New International Dictionary [2d ed., Unabridged].) It is apparent that the Legislature, in providing for rent adjustments where there has been "an increase in the rental value * * * as a result of a substantial rehabilitation * * * which materially adds to the value of the property or appreciably prolongs its life, excluding ordinary repairs, maintenance and replacements" (State Residential Rent Law, § 4, subd. 4, par. [a], cl. [6]), did not intend that "rehabilitation" would result only in the event that premises were restored to a prior physical condition.

Section 117 of the State Rent and Eviction Regulations is not applicable to the application for a certificate of eviction. When the order granting the certificate was issued, work had actually been commenced. The order was not made in response to a hypothetical question. It is not now necessary to determine what effect may be given to the prior opinion when an application for an increase in rent is made or to determine whether proper protest was made to the order granting the prior opinion.

The order should be reversed on the law, without costs, and the matter should be remitted to the local rent administrator for the issuance of new conditional certificates of eviction with a thirty-day waiting period from the date of the order entered hereon.

BELDOCK, J. (dissenting). In a forty- or fifty-year-old cold-water, heatless tenement house, without violations of any kind, the owners want to make improvements by installing for the first time a central oil steam heat and hot water system, replacing the old plumbing by brass plumbing, and replacing old toilet tanks by flushometers, all without the consent of the tenants to an increase in rent. It is conceded that the improvements are not presently required for the operation, preservation, or maintenance of the structure. The sole purpose for making them is

to obtain an increase in rent and to add to the value of the property. Although an owner may add to the value of his property or appreciably prolong its life by substantial rehabilitation and thus obtain an increase in rent against the consent of the tenants, in my opinion, the improvements here contemplated are not encompassed within the term "rehabilitation," but amount rather to an increase in services, which requires the consent of the tenants to justify an increase in rent.

MacCrate, Acting P. J., Schmidt, Murphy and Ughetta, JJ., concur in *Per Curiam* opinion; Beldock, J., dissents and votes to affirm, with memorandum.

Order reversed on the law, without costs, and matter remitted to the local rent administrator for the issuance of new conditional certificates of eviction, with a thirty-day waiting period from the date of the order entered hereon.