Maxwell Shapiro, J.
This is a summary proceeding by a landlord to remove a statutory tenant from his residential apartment in a large apartment house located at 1148 Fifth Avenue, New York City. Simply stated, the landlord’s position is that the tenant has breached a serious and substantial obligation of his expired lease by continuing to maintain an air-conditioning unit in the apartment after the landlord had requested the tenant in writing to remove the unit; and this, despite the fact that the air-conditioning unit may have been installed with the landlord’s written consent.
The eviction of the tenant is sought under the provisions of paragraph (a) of subdivision 1 of section 5 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) which, among other things, authorizes summary removal of a statutory tenant when it is shown that he is “ violating a substantial obligation of his tenancy ”. (Italics added.)
Two prime questions are posed by this proceeding. (1) Under what conditions, if at all, may a tenant maintain an air-conditioning unit in his apartment against an asserted claim by a landlord that such installation is without the landlord’s consent or despite his express refusal to consent! (2) Assuming arguendo that there is no such right in a statutory tenant, is the continued maintenance of the unit so serious and substantial a violation of the tenant’s obligation of tenancy as to justify and warrant summary eviction from his dwelling!
The following salient facts sharply frame the issues. Tenant has occupied his apartment since October, 1947. The air-conditioning unit involved is a standard one-half ton window box type unit which is installed in a window in the tenant’s apartment on the Fifth Avenue side of the building. It rests on the horizontal portion of the window frame and is attached to the window frame on the inside of the room by simple brackets. Neither the unit nor the brackets are in any way attached to the outside of the building by screws, steel brackets or otherwise. On the contrary, the unit is rigidly supported by the said brackets which in turn are hooked into place inside of the room.
The unit extends about six and one-half inches from the outer end of the vertical side of the window frame and about five inches beyond the outside brick wall of the building. *737 Approximately three inches below the bottom of the air conditioner there is a long and substantial stone ledge which runs along the outside of the building on both the 96th Street side and the Fifth Avenue side. This ledge is a structural and ornamental part of the building. The foremost portion of the ledge extends approximately ten and one-half inches beyond the outer end of the air conditioner. Photographs submitted by the landlord showed that the entire air-conditioning unit was thus well within the confines of this ledge. For many years window guards were maintained on all of the windows of the tenant’s apartment facing this ledge with the express consent of the landlord. The window guard on the window involved was removed to make room for the air conditioner involved. These window guards are of the standard curved metal type facing to the outside of the window frame and resting on the ledge and extended beyond the outside brick wall of the building. They thus afforded to this apartment the beneficial use of substantially all of the space outside of the window now occupied by the air-conditioning unit.
The air-conditioning unit is not attached in any way to the ledge but is entirely separate from it with a vertical space of about three inches existing between the two. Because the ledge protrudes well beyond the outermost edge of the air-conditioning unit, the latter is not visible from the street directly below the window.
The landlord gave its consent in writing to the tenant for the installation of the air-conditioning unit in question. There is doubt whether such consent was orally withdrawn before its installation. It is unnecessary to determine whether the attempted written revocation of such consent made by the landlord immediately prior to this proceeding is significant, since the maintenance of such air-conditioning unit by the tenant was and is a proper exercise of the tenant’s right as an incident to the enjoyment of his apartment.
In Taft Constr. Corp. v. Bachnoff (1 Misc 2d 834, unanimously affd. 1 Misc 2d 835) this court held that an air-conditioning unit entirely within the window line of a building with the exception of about six inches which protrudes beyond the window sill and which in general is neither attached nor touches the outside of a building in any way does not constitute an unlawful trespass upon the landlord’s property. On the contrary, since such an appliance has its physical origin and attachment on the demised premises, it is incidental to the proper enjoyment of the said premises. The rule there enunciated was codified by the State Bent Administrator in Admin *738 istrator’s Opinion No. 95. Since that decision is conformable with the legislative intent, and the language of the statute, it must be given great weight. (Lightbody v. Russell, 293 N. Y. 492.)
In the Taft ease (1 Misc 2d 834, affd. 1 Misc 2d 835, supra), this court found that the air-conditioning unit extended about six inches beyond the window sill. However, it was not intended to establish a firm arithmetical formula. Nor did this court intend there by the use of the term “ sill ” a definition of a scientific boundary line since the sill forms only one component part of the wooden frame of the window. The multitude of recognized varied architectural designs of window structures in buildings would defeat any attempt to codify the holding in the Taft case into a firm arithmetical rule. On the contrary, this court intended in that case to prescribe a rule of reason and not of arithmetical exactitude. An air-conditioning unit which is not affixed to the outside of a building, having its physical origin within an apartment, and which protrudes only some insignificant distance beyond the window frame sill or casing is what might normally be considered the boundaries of the demised premises. The maintenance of such a unit is incidental to the tenant’s enjoyment of his apartment and does not interfere with or squat upon the landlord’s property.
The present case falls squarely within the rule of the Taft case. It is, a fortiori, since the unit here protrudes about six inches from the window frame, but in this instance it is well within the outermost end of the building ledge which is immediately beneath such unit. Such use does not require the landlord’s consent and this alone warrants dismissal of the petition herein with final order for the tenant.
There is yet another reason which would justify this result. The statute sought to be invoked provides that a tenant paying his rent may not be evicted except on grounds expressly specified therein. One of such grounds is for a violation of an obligation of his tenancy, only if that violation be a substantial one. Even if we were to assume argumentatively that the appliance in question did constitute a technical encroachment upon the landlord’s property, and therefore a violation by the tenant of his obligation of tenancy, nevertheless, it could not in any sense be deemed a substantial violation. (Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70; Piankay Realties v. Romano, 271 App. Div. 104, affd. 296 N. Y. 920; Buchfuhrer v. Tantleff, 200 Misc. 1117; Matter of BCC Holding Corp. v. Coster, 194 Misc. 537; Matter of Ritmas Apts. v. Coster, 196 Misc. 728.)
*739 In 660 Locust St. Corp. v. MacPherson (City Court of Mt. Vernon, Jan. 27, 1953) it was held that an air-conditioning unit installed and maintained by a tenant under conditions which the Appellate Division of the Second Department had held in that case to constitute a violation of the tenant’s obligations under the tenancy nevertheless did not constitute so substantial a violation as to warrant eviction of the tenant from the premises.
As was said by the court in Matter of Park East Land Corp. v. Finkelstein (299 N. Y. 70, 74, 75, 76, supra): “ ‘ Substantial ’ is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs. * * * The landlord established no significant departure from the obligation of the tenancy nor any loss or damage to itself. * * * In short, the asserted violation is of a purely technical nature, causing the landlord no actual loss, affording the occupant no profit or commercial advantage. ’ ’
The court there concluded by asserting that the policy which motivated the emergency rent control laws did not warrant evictions for more technical violations. ‘ ‘ Reference to the rent law itself confirms our conclusion. The firm command of Local Law No. 66 is that no rent-paying tenant shall be evicted. The exceptions enumerated are designed, it is clear, to prevent extreme hardship and inequity to the landlord, inconvenience to other tenants or outright illegal action by the tenant, in the course of effectuating that mandate. There is no need to repeat that none of these extraordinary elements are present in this case; on the contrary, denial of the certificate of eviction has furthered the rent law’s underlying purpose and objective.” (Pp. 76, 77.)
The landlord alleged in its precept that the installation and maintenance of the unit presents a “ hazard to those passing below, to whom the landlord is liable in damages if it permits such installations, damages the valuable stone work of the building by reason of dust, grime and rust * * # and intrudes upon and squats upon the property of the landlord.”
However, there was no proof submitted to support that allegation. On the contrary, it amply appears upon the record that no damage whatever is done to the landlord. Noteworthy in this respect is the landlord’s admission that out of the 52 apartments in the building more than 30 similar units are being maintained by other tenants without challenge or objection *740 from the landlord, and in some apartments without the landlord’s consent.
The propriety of the equitable doctrine that the courts in these proceedings must weigh the relative injury to the parties as the only significant test in determining an alleged violation of a substantial obligation of a tenancy is well illustrated by the instant case. A more technical infringement without proof of injury to the landlord impels the denial of summary relief.
It is clear therefore that the landlord’s proceeding must fail for the further ground that there has been no showing of a violation by the tenant of a substantial obligation of his tenancy.
Final order in favor of the tenant.