OPINION OF THE COURT
Maurice Harbater, J.
ISSUE
When is there a violation of a tenant’s “substantial obligation” which would warrant the granting of an eviction?
FACTS
The basis for this holdover proceeding is that respondent tenant, George Bland, has been living with an unrelated male friend, David P. Mapp, in violation of his lease since July, 1982.
The rent-stabilized lease, in addition to containing covenants against assignment and subletting, restricted use of the apartment to members of the tenant’s “immediate family, as defined by applicable law” and also stated that tenant “shall be the sole occupant of the demised premises.”
This court will not address itself to the issue of the “sole occupant” clause inserted as an “additional article” in the. lease agreement.
*559 Nor will this court give credence to the landlord’s memorandum of law referring to the “lease agreement which limited occupancy to the named tenant only.”
The reason for this court’s position is that in the notice to cure dated July 27, 1982, and the notice of termination dated August 12, 1982, the landlord elected to bring this proceeding on the grounds that the premises are being occupied by persons other than the tenant and “his immediate family,” and is not based on the violation of the “sole occupant” clause. This apparently was only an afterthought on the part of the petitioner.
ARGUMENTS
The petitioner landlord cites Equity Invs. v Paris (113 Misc 2d 681 [App Term, 2d Dept]) which held that the occupancy of tenant’s parents substantially violated the specifically defined “immediate family” clause.
The respondent tenant relies heavily on 420 East 80th Co. v Chin (115 Misc 2d 195 [App Term, 1st Dept]) and asserts that the court “has abolished a cause of action for ipso facto violation of lease provisions prohibiting occupancy by persons not members of tenant’s immediate family.”
THE LAW
The Appellate Term in the Chin case, by a divided court, stands for several propositions.
Firstly, that an “immediate family” clause may not be invoked as a predicate for eviction if its application will result in unlawful discrimination. (Hudson View Props, v Weiss, 106 Misc 2d 251, revd 109 Misc 2d 589, revd 86 AD2d 803.)
Secondly, “Inasmuch as the circumstances here involve cohabitation by two adult males, a case of discrimination on the basis of marital status cannot be made; indeed, any discrimination practiced against tenant could only fairly be characterized as discrimination based upon sexual or affectional preference, a status not protected under the Executive Law.” (420 East 80th Co. v Chin, supra, p 196; emphasis supplied.)
*560 Then how, if the landlord was not guilty of an unlawful discrimination, did the majority court hold for the respondent, despite the clear prohibition in the lease against persons other than immediate family members to occupy the apartment? The court found (p 197) there was no violation of a “substantial” obligation and that there was no “showing of demonstrable prejudice to the landlord”.
It has been common law for many, many years that a forfeiture of a lease must be based on a “substantial” default. A simple, minor breach of an obligation of a tenancy has hardly been grounds to terminate a tenancy. (Matter of Park East Land Corp. v Finkelstein, 299 NY 70, 74.)
Where does this leave us? What is “substantial?” A violation might not be “substantial” if it “is of a purely technical nature, causing the landlord no actual loss, affording the occupant no profit or commercial advantage” such as “no increase in the total number of tenants, no increase in the landlord’s burdens or costs,” and “no increase in wear and tear upon facilities”. (Matter of Park East Land Corp. v Finkelstein, supra, p 76.)
However, in the case before this court, we do have an increase in the total number of tenants, with an increased burden on the landlord because of this additional unauthorized occupant who uses the building facilities at the tenant’s and occupant’s profit.
In the Matter of Park East Land Corp. v Finkelstein (supra), there is no increased occupancy. As stated by Judge Fuld (p 76), “Of the three persons who originally occupied the apartment, one remains and the stay of the two additional occupants is assertedly temporary.” “[TJhere is not even a suggestion that the premises are being illegally used, or that, under the guise of a good faith tenancy, the space is being sublet or rerented.”
In 1949, in the Park East Land case, the Court of Appeals was to decide whether to affirm or reverse the Appellate Division order that the rent commission grant a certificate of eviction based upon a violation of a “substantial” obligation. If the court had not reversed the Appellate Division, the tenant would have invariably been evicted *561 and would have been denied the rent laws’ underlying purpose and objective.
In this case, no certificate of eviction is before the court. Additionally, we now have RPAPL 753 (subd 4) which provides that if there is a substantial breach of the lease, “the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach.” (Emphasis added.)
Today, when a final judgment of possession is granted to an owner, it does not necessarily mean that such “judgment” will be “final” if tenant elects to cure the breach.
Another factual difference with this case and the Park East Land case is that the latter was a judicial review under CPLR article 78 of an administrative determination. The landlord had applied for a certificate of eviction from the rent commission which denied the issuance of such certificate based on landlord’s failure to prove a “substantial obligation”. The Court of Appeals had only to find a rational basis for the conclusions approved by the administrative body and which was neither arbitrary nor capricious. (Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108.)
“[Although we might have reached a different conclusion, this court may not substitute its judgment for that of the Board.” (Matter of Century Operating Corp. v Popolizio (90 AD2d 731, 732.)
The Court of Appeals in Park East Land (supra, pp 74-75), further stated, “There is no necessity for the courts to formulate * * * a * * * definition of what constitutes violating a ‘substantial obligation’ of the tenancy; that task is left to the commission, the agepey administering the local rent laws.”
But, since we have no “agency” involved in this case, it is a matter for this court to define “substantial”.
“ ‘Substantial’ is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs.” (Park East Land Corp. v *562 Finkelstein, supra, p 74; cf. Steel Stor. & Elevator Constr. Co. v Stock, 225 NY 173, 179.)
This court finds the “factual setting” here quite different from the facts in Park East Land Corp. v Finkelstein (supra).
In a very recent Appellate Division, First Department case, a Mr. S, 32 years of age, wished to adopt as his son, his 43-year-old friend, Mr. H. Both had been living together for the past three years. The lease was in Mr. H’s name and limited occupancy to the tenant and the immediate members of his family.
One of their reasons for wanting to enter into a “parent-child” relationship was that their building was about to go co-op. Because the landlord had taken “some action against other tenants to enforce that clause,” adoption would, under the circumstances, serve the practical purpose of relieving their anxiety that they might lose their apartment because of Mr. H.’s breach of a “substantial obligation” of the tenancy.
The court granted their adoption petition which resulted in the 43-year-old Mr. H having his father, the 32-year-old Mr. S, live with him as a member of his “immediate family”. (Matter of Adult Anonymous II, 88 AD2d 30.)
However, in the case before this court, the respondents have made no such allegations that they have adopted one another or that they even plan to make such application.
The lease herein limited occupancy to tenant’s “immediate family, as defined by applicable law.” Applicable law does not define a “male friend” of a male tenant as a member of such tenant’s immediate family.
In view of this clear and unambiguous clause, it is clear that the occupancy by tenant’s friend violated the terms of the lease which must be accorded their plain meaning. (Equity Invs. v Paris, 113 Misc 2d 681, supra [App Term, 2d Dept].)
As a general rule, where the language of the lease is clear and unambiguous, the intent of the parties must be deduced only from the terms of the written agreement. (Martin v Glenzan Assoc., 75 AD2d 660; Nichols v Nichols, *563 306 NY 490.) The court is required to give all the words and phrases used in the lease their plain meaning in order to determine the rights of the parties. (R.I. Realty Co. v Terrell, 254 NY 121; Martin v Glenzan Assoc., supra.)
In 420 East 80th Co. v Chin (115 Misc 2d 195, supra [homosexuals]), and Avest Seventh Corp. v Ringelheim (116 Misc 2d 402 [App Term, 1st Dept] [lesbians]), it is conceded that those cases do not present an instance of unlawful discriminatory practices in the leasing of housing accommodations arising under section 296 (subd 5, par [a]) of the Executive Law. “There is as yet no statutory prohibition against discrimination on the ground of sexual preference (assuming arguendo that this landlord is so motivated), and it is for the Legislature, not us, to establish additional categories of protection.” (420 East 80th Co. v Chin, supra, p 197 [Hughes, J. P., dissenting opn].)
“Absent a supervening statutory proscription, a landlord is free to do what he wishes with his property, and to rent or not to rent to any given person at his whim. The only restraints which the law has imposed upon free exercise of his discretion is that he may not use race, creed, color, national origin, sex [or disability], or marital status as criteria. So, regrettable though it may be, a landlord can employ other criteria to determine the acceptability of his tenants”. (Kramarsky v Stahl Mgt., 92 Misc 2d 1030,1032; Matter of State Comm, for Human Rights v Kennelly, 30 AD2d 310, 312.)
Under today’s law, by lease contract, a landlord may prohibit tenants from structurally altering their apartments; restrict the keeping of pets (even for security and companionship reasons); and deny tenants the installation of modern conveniences such as washing machines, air conditioners, etc., all of which are deemed to be “substantial obligations” of the tenancy.
Why, then, if a landlord does not violate the Human Rights Law, may he not contractually limit occupancy to chosen individuals and their immediate families?
CONCLUSION
The court finds that respondents have failed to prove that the landlord was guilty of any unlawful discriminatory practices by bringing this summary proceeding.
*564 Additionally, based on the factual setting in this case, this court is of the opinion that the tenant’s violation of the “immediate family” clause is “substantial”. (Equity Invs. v Paris, supra; Fraydun Enterprises v Ettinger, 91 Misc 2d 119; Mideast Holding Corp. v Tow, 60 Misc 2d 422.)
Final judgment of possession to be entered in favor of the petitioner. Issuance of the warrant is stayed pending further order of this court on condition that the tenant’s friend, David P. Mapp, vacate the premises within 20 days after service of a copy of this judgment upon the tenant.