■ PARK WEST VILLAGE, Appellant, v BARBARA LEWIS, Respondent. — Order of the Supreme Court, Appellate Term, First Department, entered on July 14, 1982, which reversed a judgment of the Civil Court, New York County (Ralph Waldo Sparks, J.), entered on October 5, 1981, and directed final judgment in favor of the tenant dismissing the petition, is affirmed, without costs. Since June 1, 1969, respondent tenant Barbara Lewis has lived in a second-floor rent-stabilized apartment at 788 Columbus Avenue in Manhattan. Her lease contains a clause which states that: "Tenant shall not use or occupy the apartment or allow the apartment to be used * * * for any purpose other than as and for a private dwelling-place". During her lengthy residence in this apartment, respondent who has a PhD in clinical psychology, has counseled clients in her living room. Her practice is confined to an average of only 15 patients per week, amounting to no more than two or three client visits each day. Moreover, respondent's practice is not merely modest, but unobstructive as well. Her patients suffer from relatively moderate psychological disorders, and the treatment which is provided to them consists entirely of conversational therapy. In that regard, respondent does not prescribe or dispense any medication, nor does she employ machinery or equipment of any kind. Her apartment has not been remodeled to accommodate the practice, and because of the short distance to the second floor, her patients rarely use the elevator. In all the years that respondent has performed her service, she has never received a single complaint from any of the other tenants in the building. Clearly, not all business pursuits entail a violation of the lease. For example, a writer or a painter would be authorized to carry out his or her profession without threat of eviction. Presumably, there would also be no objection to a tenant's bringing some work home from the office or to a lawyer's inviting an occasional client to his or her apartment for a consultation. The fact is that most people engage in a certain degree of business activity in their home. What is crucial is not whether a tenant conducts some business in his or her apartment but that the extent of that undertaking be maintained within reasonable bounds. In that connection, an examination of the record herein fails to reveal a scintilla of evidence that respondent's very limited practice has created any disturbance or nuisance, impaired the value of the landlord's property, or in any manner altered the residential character of the dwelling unit. The landlord has not demonstrated the existence of any security problems or even that management or the other tenants are in the least inconvenienced by respondent's small number of weekly visitors. In fact, the only proof introduced at trial was the lease and respondent's testimony concerning the nature of her practice, which is not a matter of dispute between the parties. Pursuant to subdivision A of section 53 of the Code of the Rent Stabilization Association of New York City, Inc., a tenant may not be evicted unless he or she is in violation of a "substantial obligation" of the tenancy. According to the Court of Appeals, purely technical violations which cause the landlord no actual loss do not constitute substantial breaches of a lease. (*Matter of Park East Land Corp. v Finkelstein,* 299 NY 70.) Applying this standard, courts have consistently held that the limited use of a primary residence for some business purposes does not change the residential character of a dwelling (*Nissen v Wang,* 105 Misc 2d 251; *Park Towers South Co. v A-Lalan Imports,* 103 Misc 2d 565; *M.D.S. Props. v Rich,* NYLJ, Oct. 2, 1981, p 4, col 1 [App Term, 1st Dept]; *Feil v Zuckerman,* NYLJ, Nov. 26, 1979, p 6, col 2 [App Term, 1st Dept]; see, also, *Fleischer v Third Brevoort Corp.,* 40 AD2d 661). There is nothing in the recent decision by the Court of Appeals in *Hudson View Props. v Weiss* (59 NY2d 733), which would support the proposition that a tenant who has carried out relatively minor business activities in his or her home is in substantial breach of the lease such as would warrant eviction. Consequently, the Appellate Term

appropriately directed final judgment in favor of the tenant dismissing the petition. Concur — Milonas and Silverman, JJ. Sandler, J. P., concurs in a memorandum and Sullivan and Ross, JJ., dissent in a memorandum by Ross, J., as follows:

Sandler, J. P. (concurring). This seems to me a close case. There is obvious force to the dissenting opinion's observation that rent stabilization was not designed to protect the right of residential tenants to engage in profit-making activities. However, when the totality of circumstances is considered in light of the flexible approach articulated by the Court of Appeals in *Matter of Park East Land Corp. v Finkelstein* (299 NY 70) there appears to be adequate support for the conclusion reached by the Appellate Term. Three circumstances taken together seem to me of particular importance: (1) the absence of any demonstration whatever of injury to the legitimate interests of the landlord or of other tenants; (2) the character of the activity, which is inherently quiet, unobstrusive, harmonious with a residential setting, and of undoubted social usefulness; and (3) the nature of the apartment house in question, a high-rise apartment building with hundreds of apartments in which the limited traffic to and from the tenant's second-floor apartment is unlikely to have any perceptible impact. The opinion of the Court of Appeals in *Matter of Park East Land Corp. v Finkelstein* (*supra*, p 73) remains the leading appellate authority on the meaning of the phrase " 'substantial obligation of * * * tenancy' " in regulatory laws that responded to the extended period of acute apartment shortage in our metropolitan area. Indeed, it appears to have been the only appellate authority above the Appellate Term level in which the question has been addressed systematically. In *Matter of Park East Land Corp.* (*supra*, p 73), the Court of Appeals sustained as reasonable the determination of the Rent Control Commission that a particular violation of the " 'immediate family' clause" did not constitute a violation of a " 'substantial obligation of * * * tenancy' ". More important than the holding was the approach to the problem adopted by the Court of Appeals, which emphatically rejected the notion that the issue lends itself to a simple cut-and-dried legal formula. Thus the Court of Appeals noted (at p 74): " 'Substantial' is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual setting in which it occurs." The court went on to say (at p 75): "Whether or no strict adherence to technical concepts of landlord and tenant law would have justified eviction under ordinary conditions in ordinary times, need not detain or concern us. It is enough to say that, in the housing field at least, these are not ordinary times. If anything is clear, it is that mechanical application of common-law rules will not promote reasonable decision in cases controlled by emergency rent legislation". The court went on to say (at pp 75-76): "The landlord established no significant departure from the obligation of the tenancy nor any loss or damage to itself". Still further on, the court referred to the rent control law in words that seem equally applicable to the law governing rent stabilization (at pp 76-77): "The firm command of Local Law No. 66 is that no rent-paying tenant shall be evicted. The exceptions enumerated are designed, it is clear, to prevent extreme hardship and inequity to the landlord, inconvenience to other tenants or outright illegal action by the tenant, in the course of effectuating that mandate. There is no need to repeat that none of those extraordinary elements are present in this case". As in *Matter of Park East Land Corp.*, there is here no showing of loss or damage to the landlord, nor any showing of inconvenience to other tenants. It is true, as noted in the dissenting opinion, that the court also observed that the violation in *Matter of Park East Land Corp.* (p 76) afforded "the occupant no profit or commercial advantage".

Although this is indisputably a relevant distinguishing factor, a study of the Court of Appeals opinion makes it clear that the element of profit to the occupant was not intended to have the dispositive significance attached to it in the dissenting opinion here. The court's opinion relied heavily on *Piankay Realties v Romano* (296 NY 920, affg 271 App Div 104), in which it had sustained the denial of an injunction to the landlord where a commercial tenant had violated a covenant of the lease restricting the character of the business that might be transacted in the premises. The Court of Appeals described that authority in the following terms (at p 76): "The Appellate Division refused to grant an injunction, resting its decision — which we affirmed — upon the ground that the landlord had 'not shown any undue or increased burden or strain on the building facilities, or that its costs for insurance or operations' were increased, or that it was 'prejudiced in any way by the added use' (271 App. Div., at pp. 105-106). We find that reasoning both apt and cogent here." In short, the Court of Appeals in *Matter of Park East Land Corp. v Finkelstein* (*supra*), although referring to the absence of profit or commercial advantage to the tenant, supported its conclusion in part on the basis of a decision in which an injunction had been denied although there had been a violation of a lease covenant by a commercial tenant that involved profit and commercial advantage. Although I agree that the amount of profit implicit in the tenant's practice here makes this a close question in terms of the purpose of rent stabilization, I am persuaded that the totality of factors described above supports the Appellate Term's conclusion that there was not here demonstrated a significant departure from the obligations of the tenancy.

Ross, J. (dissenting). I dissent. In my opinion the order of Appellate Term should be reversed and the judgment of Civil Court should be reinstated. The facts are undisputed. Since 1969 the tenant has resided in apartment 2P in Park West Village, 788 Columbus Avenue, Manhattan. Paragraph 2 of the lease between tenant and landlord forbids the tenant from using the apartment "for any purpose other than as and for a private dwelling-place". Despite this provision, tenant, who holds a doctorate in psychology, concedes that she has been carrying on a psychotherapy practice in the apartment in violation of the lease and without the permission of landlord. She admits that she sees an average of four patients a day, or, "between 16 and 22 [patients] a week" (material in brackets added). Based upon the facts and the law, we find that the tenant has violated a substantial obligation of her tenancy within the meaning of subdivision A of section 53 of the Code of the Rent Stabilization Association of New York City, Inc. "The lease could not [be] * * * clearer * * * The tenant never claimed ambiguity in the lease" (*Overstreet v Soffer,* 74 AD2d 800). The majority misperceives the issue. A substantial violation of tenancy has occurred here because the tenant is conducting a commercial enterprise in residential premises. The majority makes reference to the tenant's "limited practice", and contends that her practice is confined to "only 15 patients per week". The majority ignores the fact that this is not a case where the tenant sees an occasional client. It is her only place of business. Her residential apartment is where she conducts her full-time practice. If, as the majority suggests, "15 patients" is insubstantial, when does the breach become substantial? At 20? Or 30? The majority's reliance on *Matter of Park East Land Corp. v Finkelstein* (299 NY 70), for the proposition that purely technical violations may not constitute a substantial breach of the lease, is misplaced. That case is distinguishable. In *Matter of Park East Land Corp. v Finkelstein* (*supra,* at p 76), the court said: "the asserted violation * * * [affords] the occupant *no profit* or *commercial advantage*" (material in brackets and emphasis added). Here, not only is tenant deriving a profit from the breach of the lease, she is gaining a decided "commercial advantage" over other psychologists, who must rent

commercial space for their practice. What matters is that, unlike the majority's reference "to a tenant's bringing some work home from the office or to a lawyer's inviting an occasional client to his or her apartment for a consultation", the tenant is using her home as a regular workshop. In New York City's tight rental market, we do not believe that rent stabilization, needed for the protection of residents, should be used by this tenant for the purpose of maintaining a commercial venture, from which she derives her livelihood. Such practice is a violation of a substantial obligation under the lease.