*1035 OPINION OF THE COURT
Joseph E. Capella, J.
The petitioner commenced this holdover proceeding on the premise that the respondent is a month-to-month tenant not subject to any rent regulation. The respondent interposed an answer alleging, inter alia, that she is either the owner of the cooperative shares for the subject unit or, alternatively, the rent-controlled tenant. The petitioner now moves to strike all of the respondent’s affirmative defenses (CPLR 3211) and seeks summary judgment (CPLR 3212) in its favor, and the respondent likewise cross-moves for summary judgment.
There is no dispute that the respondent’s tenancy was initially subject to the New York City Rent and Rehabilitation Law (Rent Control Law); however, in 1988, the New York State Department of Law approved an eviction plan to convert the subject building into cooperative ownership. Under the eviction plan, nonpurchasing rent-controlled tenants that were disabled could file an appropriate notice with the Attorney General of the State of New York in order to avoid eviction. According to the respondent, although she was disabled, she elected to purchase the shares for the subject unit at a price of $250, and on January 29, 1988, the parties entered into an agreement for same. At the time, however, the respondent was in arrears with her rent, resulting in a nonpayment proceeding, which the parties settled on August 31, 1988. The August 31, 1988 stipulation provided the petitioner with a final judgment for the outstanding rent, gave the respondent a payment plan to pay off her arrears, and at the conclusion of said payments, entitled her to purchase the shares for the subject unit. In the stipulation, the petitioner acknowledged “holding [the] $250 . . . purchase price.” It is not exactly clear what ultimately occurred in the nonpayment proceeding after the stipulation was entered into, but there is no dispute that the respondent was neither evicted nor given shares.
In 2005 and again in 2007, the petitioner commenced holdover proceedings against the respondent to terminate her rent-controlled tenancy due to nonprimary residence (9 NYCRR 2204.6); however, neither proceeding went beyond the discovery stage. In 2005, the respondent commenced a Supreme Court action seeking an order directing the petitioner to issue her the shares for the subject apartment. Although the Supreme Court ruled in the respondent’s favor, the Appellate Division, First Department, reversed, finding that her cause of action was not *1036 for mandamus relief (CPLR 7803 [1]) but instead a breach of contract claim (i.e., the August 1988 stipulation). (Matter of Guzman v 188-190 HDFC, 37 AD3d 295 [2007].) The Appellate Division then applied a six-year statute of limitations (CPLR 213 [2]) and dismissed the action as time-barred.
It is well settled that at the expiration of a rent-controlled lease, the tenant becomes a “statutory tenant” and all terms of the lease are projected into and govern the statutory tenancy. (Matter of Park E. Land Corp. v Finkelstein, 299 NY 70 [1949].) However, under the General Business Law rent-controlled tenants who buy into a cooperative purchase shares that are allocated to the individual apartment, and receive a proprietary lease. (General Business Law § 352-eeee.) A purchaser is specifically defined as a person who owns the shares allocated to a dwelling unit (General Business Law § 352-eeee [1] [d]), and a nonpurchasing tenant is a person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date (General Business Law § 352-eeee [1] [e]). Unlike statutory tenants who are disabled and decline to purchase under an eviction conversion plan and thus retain their statutory status under rent control (General Business Law § 352-eeee [2] [d] [iii]), those who elect to purchase are viewed as having voluntarily relinquished their statutory protection in exchange for ownership in the cooperative.*
To date, the respondent does not own the shares appurtenant to the subject unit. Neither side could cite any authority which addresses the status of a previously rent-controlled tenant who elects to purchase under an eviction plan, but for one reason or another never receives shares in the corporation. Justice Saxe addressed a somewhat similar issue in De Santis v White Rose Assoc. (152 Misc 2d 567 [Sup Ct, NY County 1991]), which involved a mortgagee that had foreclosed upon a cooperative and sought to evict the apartment owners due to their failure to remain current in use and occupancy payments. The apartment owners were formerly rent-stabilized tenants. Relying on Greenberg v Colonial Studios (279 App Div 555 [1st Dept 1951]), *1037 Justice Saxe ultimately determined that upon the foreclosure sale, the apartment owners reverted back to their rent-stabilized status. According to Justice Saxe, the Rent Stabilization Law and Code do not apply to cooperatives (Administrative Code of City of NY § 26-504) for so long as the housing accommodation is owned as a cooperative (9 NYCRR 2520.11). Therefore, as soon as a multiple dwelling is no longer owned as a cooperative, the Rent Stabilization Law and Code again automatically become applicable.
According to the petitioner’s offering plan, “[a]s of the date of Closing, Previously Controlled Tenants who do not buy shares will be subject to the provisions of Rent Control.” Now although the Rent Control Law does not contain language identical to the Rent Stabilization Code and Law, and the instant proceeding does not involve a foreclosure (De Santis v White Rose Assoc., 152 Misc 2d 567 [1991], supra), the respondent is not a purchaser, and therefore there should be no issue as to whether she reverts back to her prior rent-controlled status. And to the extent that it is an issue, given that the respondent never became an owner, but merely opted to purchase, she is in a better position to revert back to her prior status. The General Business Law also provides that nonpurchasing tenants who reside in dwelling units subject to government regulation “shall continue to be subject thereto during the period of occupancy.” (General Business Law § 352-eeee [2] [d] [ii].) In addition, the petitioner acknowledged the respondent’s statutory tenancy in the 2005 and 2007 nonprimary residence holdover proceedings. The petitioner has also been charging the respondent rent (versus use and occupancy or maintenance) for some time, which itself is a recognition by the petitioner that the respondent is a tenant of some sort. Yet the respondent’s statutory tenancy should not be deemed terminated by virtue of her opting to purchase, since she never actually became an owner in the cooperative. Based on the aforementioned, this court finds that the respondent is neither a month-to-month nor a purchasing tenant, but in fact remains a statutory tenant to this day.
While the terms of the offering plan and General Business Law § 352-eeee may permit a cooperative to bring an eviction proceeding against a rent-controlled tenant if at least 35% of the previously rent-controlled tenants in the subject building bought shares within six months from the presentation date, the petitioner has not based its claim on such an argument. Rather, both the predicate notice and petition allege that the *1038 premises are not subject to rent regulation and that the respondent is a month-to-month tenant. This misstatement of the respondent’s interest in the subject premises renders the petition defective. (MSG Pomp Corp. v Doe, 185 AD2d 798 [1st Dept 1992].) Therefore, the respondent’s motion for summary judgment and dismissal is granted accordingly, and the petitioner’s motion is denied as moot.

 It should be noted that nonpurchasing disabled tenants are not precluded from subsequently purchasing the dwelling unit or the shares allocated thereto on the terms then offered to tenants in occupancy (General Business Law § 352-eeee [1] [g]); however, there is no reciprocal provision to permit purchasing disabled tenants to subsequently not purchase.