In the Matter of the STATE COMMISSION FOR HUMAN RIGHTS, Respondent, *v.* TIMOTHY KENNELLY et al., Appellants. NANCY JOHNSON, Intervenor-Respondent.

Second Department, July 11, 1968.

*Waxstein & Gelbman* (*Morris Gelbman* and *Morton N. Wekstein* of counsel), for appellants.

*Henry Spitz* (*Sam Singer* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General* (*Lloyd G. Milliken, Samuel A. Hirshowitz* and *George D. Zuckerman* of counsel), in his statutory capacity under section 71 of the Executive Law.

*Dannenberg, Hazen & Lake* (*Richard E. Burns* of counsel), for intervenor-respondent.

BELDOCK, P. J. The appellants are alleged to have discriminated against the complainant, a Negro, in violation of the Law Against Discrimination (Executive Law, art. 15 [specifically § 296, subd. 5, par. [a], cls. (1), (2)]), in the rental of a 9-room duplex apartment located on the second and third floors of the appellants' three-apartment dwelling, which apartment the appellants had advertised as being available for rental. They primarily claim that (a) the complainant has nine children and is on public welfare and is therefore an undesirable tenant, irrespective of her race, creed, color or national origin; (b) the directives embodied in the commission's order, which, *inter*

*alia*, require that they rent to the complainant and offer her a two-year standard form lease, constitute a deprivation of property and an arbitrary and unlawful exercise of the commission's powers. They unsuccessfully sought below to have the matter remitted for a further hearing so as to adduce evidence of the complainant's unreliability as a recipient of payments for rent from the Department of Welfare and of the insecurity of a landlord where rent is paid by the Welfare Department because of its policy not to guarantee a lease and to withhold payment of rent under section 143-b of the Social Welfare Law in the event of any municipal violations.

The appellants also question the constitutionality of the statute (Law Against Discrimination) insofar as it is made applicable to private housing, such as the premises at bar, and the constitutionality of certain specific provisions therein contained. They further urge that they have a right to withdraw the premises from the rental market and to occupy the premises for themselves, their four children and an expected child of which latter anticipated event they were allegedly not aware until after the hearing before the commission. They accordingly submitted below a counterorder embodying all the directives of the commission, but making them effective subject to the appellants' right to occupy the premises themselves and contingent upon their failure to do so or upon the termination of such occupancy. Special Term rejected it. The appellants nevertheless took possession of the premises, presently occupy them and seek to preserve their present occupancy status. They claim that the court's rejection of the counterorder constituted a deprivation of their property rights and was confiscatory.

In my opinion, the evidence adduced met the test of sufficiency laid down in section 298 of the Executive Law and adequately supported the commission's findings that the appellants had discriminated against the complainant because she was a Negro and that they thereby violated the applicable provisions of the Law Against Discrimination. I am mindful of the appellants' right to be selective and to reject a prospective tenant because of his or her failure to meet standards of acceptability other than those which concern themselves with one's race or color or standards which are otherwise proscribed by statute. However, in my opinion, the facts adduced justify a rejection of the *bona fides* of the appellants' reliance on these standards in failing to rent to the complainant and a conclusion that their rejection of the complainant was attributable to discriminatory motives. The lack of concern manifested by the appellants with

respect to one white applicant, allegedly with seven children, and the superficial inquiry made by the appellants as to the financial ability of the white rentee before accepting her deposit, vis-a-vis their failure to pursue any inquiry of the Negro applicants along the lines of the appellants' professed standards of acceptability, in my opinion, adequately attenuate the significance of these standards at the time the complainant was rejected and the *bona fides* of the appellants' present claims in that respect. Moreover, I do not subscribe to the appellants' claim of the lack of potential continuity in the rental payments attributed to the complainant's status as a welfare recipient, particularly where the rent is being paid by the Department of Public Welfare on a restricted basis, to wit: to the tenant and the landlord, and the change in such arrangement would be predicated on the evaluation of the complainant's reliability by the Family and Welfare Division. I consider such arrangement equatable with if not more acceptable than that made with the white tenant, whose rent-paying potential was found satisfactory predicated on the appellants' superficial inquiry as herein stated.

As for the appellants' claim of their right to withdraw the apartment from the rental market and to occupy it themselves, here again, I am mindful of their basic right to do so. However, it is my view that the exercise of such right and privilege of withdrawal and occupancy and the alleged need therefor is so tainted with bad faith when exercised, as at bar, *after* the commission's findings, as to justify a conclusion that it was but a further endeavor to escape the consequences of their discriminatory practices. To afford efficacy to this belated exercise of the appellants' aforesaid rights would be to permit a proven transgressor to circumvent the statute and would permit perpetuation of the very discriminatory practices which the statute was designed to eradicate. It would denude the commission, charged with the responsibility of implementing the design of the Legislature and administering the law as enacted, of effectiveness and would render antidiscriminatory procedures useless and the legislation but a futile gesture. While I recognize the present hardship to the appellants that the rejection of their claim in this respect entails, it hardly outweighs the hardship to the victim of their discriminatory practices. Nor can I overlook the fact that the hardship to the appellants was self-imposed when they precipitously availed themselves of their claimed right to withdraw the apartment from the rental market and occupy it themselves (a) after the rejection by the court below of their counterorder, (b) after

service of the court's order containing the commission's directives and (c) before any determination of their claim in this respect in the appellate process. There is, nevertheless, accorded the appellants, in the decretal part of the decision on this appeal, what I consider under the circumstances a fair opportunity to comply with the court's order and with the commission's directives therein contained.

Accordingly, I conclude that the directives of the commission embodied in the order of Special Term (a) bear a reasonable relationship to the discriminatory practices found to exist, (b) are not unduly burdensome or retaliatory and (c) do not exceed the reasonable authority vested in the commission (1) to implement its factual findings, (2) to effectuate the legislative policy against discrimination and (3) to prevent future violations by a proven transgressor. By reason thereof, they are fully sustainable (*Matter of Holland* v. *Edwards,* 307 N. Y. 38; *Matter of Kindt* v. *State Comm. For Human Rights,* 44 Misc 2d 896, mod. 23 A D 2d 809, affd. 16 N Y 2d 1001; *Matter of Ranadazzo* v. *State Comm. For Human Rights,* 24 A D 2d 1019).

On the issue of constitutionality, in enacting the Law Against Discrimination, our legislators took what I consider to be the enlightened initiative of extending its applicability to private housing, where the property rights of an indivdual are concededly less vulnerable to interference in the exercise of police power and more amenable to preservation under the constitutional safeguards provided therefor than those property rights which are more identifiable with the public by reason of the nature of the business in which they are exercised or the source from which they stem or receive their financial support. However, the principle of the equality of man, regardless of race or color, has become such a compelling force in our American way of life as to render further complacence with respect thereto and mere lip-service treatment thereof seriously detrimental to the public welfare. Paradoxically, the preservation of the very property rights which the proponents thereof seek to effect, by invoking the constitutional safeguards provided therefor, is predicated on the existence of a healthy society; and the subordination of status rights to property rights is not conducive thereto. It is concludable, therefore, that control over the individual's proprietary interests, to assure their use in such manner as will reflect a recognition of the dignity of man, irrespective of race or color, and his equal right to enjoy and avail himself of the facilities and privileges which such proprietary interest may afford, is well

within the purview of the reasonable exercise of the police power of the government, State or particular political subdivision involved, in the public interest. This long delayed recognition of police power jurisdiction over private housing and the preferential consideration of status rights over property rights was reflected in the recent decision of the Supreme Court of the United States (*Jones* v. *Alfred H. Mayer Co.,* 292 U. S. 409), which adequately supports the constitutionality of legislation proscribing all racial discrimination, private as well as public, in the sale or rental of property. Accordingly, I hold that, in prohibiting such discriminatory practices, the statute at bar is constitutional.

As for the appellants' attack on certain provisions of the statute designed to implement and effectuate the legislative policy to abrogate these discriminatory practices, the appellants primarily contend that they abridge the equitable powers of the court and unconstitutionally delegate them to the commission. In my opinion,. the procedure for judicial review provided in section 298 of the Executive Law, whereby the questions, *inter alia*, whether the commission's directives bear any reasonable relationship to the discriminatory practices found to exist and whether the evidence is sufficient to sustain the commission's factual findings may be fully considered by the court below, as well as the appellate courts, adequately discredits this contention by the appellants. I also find ample justification for reasonable reliance on the expertise of the commission in dealing with the maneuvers of a transgressor in this sensitive area of discrimination; and do not consider the applicability of the sufficient evidence test in the review process, as provided for in the statute (§ 298), tantamount to a violation of due process, as claimed by the appellants. If anything, the test of sufficiency of the evidence adduced poses a more rigid standard than the accepted substantial evidence rule in the administrative review process. Accordingly, the appellants' contention of unconstitutionality in this respect is rejected as being without merit. I have also considered the remaining constitutional infirmities attributed by the appellants to the statute at bar and do not find their contenions with respect thereto persuasive of any conclusion other than that herein reached.

However, in arriving at this conclusion I have not reached the issue raised by the appellants as to the constitutional validity of the punitive and compensatory provisions contained in the statute, for I do not deem it necessary to do so at this posture of the proceedings. The issue raised is premature and antici-

316

patory of a ruling or determination adverse to the appellants on this review. It is also anticipatory of a factual situation as to which no justiciable controversy presently exists; and the appellants are not precluded from precipitating a consideration thereof if, as and when the controversy arises. Nor do I construe the statute as obviating the requisite proof of willful disobedience beyond a reasonable doubt to sustain a conviction therefor, if, as and when the situation presents itself. Nor, in the light of section 301 of the Executive Law, which preserves the validity of the remaining portions of the statute if any part thereof be adjudged invalid, does the failure to reach this issue preclude a determination of the constitutionality of the remaining applicable parts of the statute herein made.

The order should be affirmed, without costs, and the time for compliance therewith should be extended until three months after entry of the order hereon.

BRENNAN, HOPKINS, MUNDER and MARTUSCELLO, JJ., concur.

Order of the Supreme Court, Westchester County, dated June 20, 1967, affirmed, without costs. The time within which appellants must comply with the order is extended until three months after entry of the order hereon.