Richard W. Wallach, J.
Aunts, maiden and otherwise (viz. such splendid types as Betsey Trotwood, Polly, Mame, and even Charley’s) have been the object of affectionate regard by the erafters of plays and novels. But unfortunately for tenant respondent in this summary holdover proceeding, they have failed to win the same high place in the hearts and minds of those who drafted the Rent, Eviction and Rehabilitation Regulations of the City of New York. Where death terminates a statu *716 ■tory rent controlled tenancy (Stern v. Equitable Trust Co., 238 N. Y. 267), if the- relict who formerly resided with the deceased is a spouse (cf. Bowman Realty Corp. v. Trice, 205 Misc. 588) or in lineal descent (Rubin & Son v. Sackler, 190 Misc. 1064), they are within the protective mantle of rent control and become successor statutory tenants. However aunts, along with the whole avuncular class of nieces and nephews et al., are cast outside the definition of ‘ ‘ immediate family ’ ’ as used in the regulations (Bent, Eviction and Rehabilitation Regulations, § 2, subd. f, par. [14], cl. [e]; § 2, suba, f, par. [15], cl. [f]; § 55, subd. a).
Dorothy Landwehr, the aunt of Edward Reardon, respondent herein, apparently provided a haven and place of refuge for him during her lifetime over the course of marital and other of life’s vicissitudes. The evidence was that he resided with her and slept on the couch in her living room at least from 1969 until her death on October 2, 1972. After that time landlord permitted Reardon to remain for a limited period, but only for the purpose of cleaning out the apartment. In opposition to this eviction proceeding to terminate his occupancy Reardon now claims to have become a statutory tenant.
That contention finds no support in the proof. Throughout whatever period he used the apartment, Reardon’s status was at best that of a licensee (Maffetone v. Micari, 205 Misc. 459; Harmatz v. Glickman, 13 Misc 2d 271). All utilities and telephone charges were exclusively billed to and paid by Mrs. Landwehr, who at all times paid the rent with her checks.' At no time did the relationship of landlord tenant arise either between Rear-don and his aunt, and Reardon and the landlord.' Even if Rear-don may have contributed about $25 per week to his aunt’s maintenance, that circumstance would not make Reardon her subtenant (Greer Marechal Jr. Foundation v. Dunne, N. Y. L. J., June 23, 1972, p. 15, col. 6).
Since Reardon never became a tenant, it was unnecessary for petitioner landlord here to obtain a certificate of eviction prior to proceeding with the service of a 10-day notice to quit (Rent, Eviction and Rehabilitation Regulations, § 56, subd. a). As stated above, Reardon does not come within this section since he never occupied these apartment premises under what could ever be described as a “ rental agreement ” with anybody.
Two other objections interposed by respondent to the maintenance of this proceeding are without merit. Since petitioner Stribula is one of two tenants in common, he acting alone may maintain a -holdover proceeding, with or without the consent *717 of his tenant in common (King v. Schwartz, 21 Misc 2d 286 and cases cited.) Also, Stribula was competent to testify directly to his ownership of the property where, as here, the basis for his personal knowledge appeared, and even though he is the party directly in interest (Pichler v. Reese, 171 N. Y. 577; Richardson, Evidence [9th ed.] § 384, subd. [i]).
Accordingly, petitioner is entitled to final judgment of possession. Because of respondent’s honorable war record, including a high combat decoration, as well as other equities in the case, the warrant is stayed for a period of 60 days from the date of this decision.