OPINION OF THE COURT
Edward J. Greenfield, J.
This is an application brought on by order to show cause, pursuant to subdivision 6 of section 297 of the Executive Law for an order enjoining respondents from selling, renting, leasing, or otherwise disposing of apartment 9J at 225 West 106th Street to anyone other than petitioner until final determination of a complaint against respondent Stahl Management now pending before the State Division of Human Rights.
The application is based upon a complaint of discrimination by one Judith Pierce, a Black divorced woman, who contends that Stahl Management unlawfully discriminated against her *1031 by refusing to rent an apartment because of her race, sex and marital status. In support of that contention, she points to the willingness of the respondent to rent an apartment to a later white applicant.
Respondent denies any illegal discrimination insisting that Ms. Pierce was not turned down because she was Black, female or divorced, but for other reasons. In support of this contention, he demonstrates that 30% of his apartments have been rented to Blacks, including the last two for which there were both Black and white applicants and that 60% of the apartments have been rented to unmarried persons. The reason for her rejection, the landlord contends, is that her application indicated that in the eyes of the landlord she would be an undesirable tenant.
The application form is a one-page sheet in which Ms. Pierce indicated that she was employed as general counsel to the New York City Commission on Human Rights, that she had earned a salary of $28,000 plus a year and that she had previously been employed with the Legal Services Corporation. Under the space for repairs and remarks she had written in "Painting — New Rulings”. Mr. Stahl, the individual who operated the respondent, candidly admits that information on the application indicated that "she would be a source of trouble to me as a tenant.” Rather than a lawyer attuned to her legal rights, he would have preferred, all other things being equal, a person who was likely to be less informed and more passive.
The Human Rights Law (Executive Law, art 15) provides in subdivision 5 of section 296:
"(a) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accomodation, constructed or to be constructed, or any agent or employee thereof:
"(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accomodation because of the race, creed, color, national origin, sex, or disability or marital status of such person or persons.
"(2) To discriminate against any person because of his race, creed, color, national origin, sex, or disability or marital status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.”
*1032 Absent a supervening statutory proscription, a landlord is free to do what he wishes with his property, and to rent or not to rent to any given person at his whim. The only restraints which the law has imposed upon free exercise of his discretion is that he may not use race, creed, color, national origin, sex or marital status as criteria. So, regrettable though it may be, a landlord can employ other criteria to determine the acceptability of his tenants — occupational, physical or otherwise. He may decide not to rent to singers because they are too noisy, or not to rent to baldheaded men because he has been told they give wild parties. He can bar his premises to the lowest strata of society, should he choose, or to the highest, if that be his personal desire.
Thus, this court concludes that there is nothing illegal in a landlord discriminating against lawyers as a group, or trying to keep out of his building intelligent persons, aware of their rights, who may give him trouble in the future. A landlord has a "right to be selective and to reject a prospective tenant because of his or her failure to meet standards of acceptability other than those which concern themselves with one’s race or color or standards which are otherwise proscribed by statute.” (Matter of State Comm. for Human Rights v Kennelly, 30 AD2d 310, 312.)
Although the courts, in the interest of justice, will endeavor to facilitate to the fullest the legislative intent and public policy underlying antidiscrimination legislation, the facts and circumstances of this case do not warrant injunctive relief. The court is not persuaded that there is a reasonable likelihood that the charge of discrimination can be sustained. Accordingly, the application is denied and the temporary restraining order vacated.