OPINION OF THE COURT
Elliott Wilk, J.
Landlord brings this holdover proceeding to evict tenant on the ground that she is violating a substantial obligation *252 of her tenancy by living with a man to whom she is unrelated by blood or marriage.
Tenant moves to dismiss landlord’s petition for failure to state a cause of action.
The Attorney-General of the State of New York was permitted to intervene on tenant’s behalf by Judge Lester Evens.
The facts are, for the most part, uncontested. For purposes of this motion, where they are disputed, I accept the facts as submitted by landlord. Tenant has been living in the same apartment building for 46 years. In January, 1967, tenant, her former husband and their children moved into the rent controlled apartment that she presently occupies under the terms of a lease signed by her former husband. The lease provides, in part, that “the demised premises and any part thereof shall be occupied only by tenant and members of the immediate family of tenant”.
Tenant’s former husband moved out of the apartment in August, 1976. In December, 1979, a man with whom tenant “has a close and loving relationship” began sharing the apartment with tenant. He treats the apartment as his primary residence.
Consistent with the mandate of Fraydun Enterprises v Ettinger[1] (91 Misc 2d 119), landlord has given tenant an opportunity to cure the violation of the lease by ejecting her companion or by bringing him within the ambit of her immediate family (presumably through marriage or adoption) .
Tenant contends that the lease provision which prohibits her current living arrangement is void because it violates section 296 (subd 5, par [a]) of the Human Rights Law (Executive Law) and section B 1-7.0 (subd 5, par [a]) of the Law on Human Rights of the City of New York (Administrative Code of City of New York, § B 1-7.0, subd 5, par [a]).
Section 296 of the Human Rights Law prohibits discrimination in several areas.
*253 Section 296 (subd 5, par [a]) provides that:
“[i]t shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:
“(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin, sex, or disability or marital status of such person or persons.
“(2) To discriminate against any person because of his race, creed, color, national origin, sex, or disability or marital status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.[2]
The Law on Human Rights of the City of New York contains language virtually identical to that of section 296 (subd 5, par [a]).
The initial question is whether these facts fall within the “marital status” prohibition of the statute, which was amended in 1975 to include such classification. Although the phrase “marital status” is not further defined by the Legislature, section 300 of the Human Rights Law requires that this statute be liberally construed (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 183; City of Schenectady v State Div. of Human Rights, 37 NY2d 421).
The State Division of Human Rights, the body responsible for enforcement of this law, has consistently taken the position that a refusal to sell or rent to unmarried and unrelated couples constitutes unlawful discrimination on the basis of marital status (Matter of Kramarsky v Price, Supreme Ct, Schuyler County, April 5, 1978, Index No. 78-29; William v Otton, Case No. 1E-CHD-1129-79, May 10, 1976 [opn of General Counsel of State Division *254 of Human Rights] ; Emil v Dewey, 49 NY2d 968 [amicus curiae brief of State Division of Human Rights filed in Court of Appeals]). A reasonable and rational construction of a statute by the agency responsible for its administration should be upheld (Matter of Howard v Wyman, 28 NY2d 434, 438).
In Matter of Kramarsky v Price (supra), the court stated that “the legislature and the Governor intended that we cast aside any prior conceived notions of moral propriety” and treat persons living together without'the benefit of clergy in the same manner as those legally married. This construction is consistent with recent cases, decided without reference to the Human Rights Laws, in which courts have held that a landlord may not interfere with a tenant’s lawful use of an apartment because of differences with his or her life-style (Messiah Baptist Housing Dev. Fund Co. v Rosser, 92 Misc 2d 383; Edwards v “Roe”, 68 Misc 2d 278; Coors Mgt. Co. v Joyce “O”, NYLJ, Aug. 6, 1979, p 12, col 6).
The courts have prohibited discrimination against unmarried couples by giving similar construction to “marital status” clauses in other statutes (see Markham v Colonial Mtge. Serv. Co., 605 F2d 566 [Equal Credit Opportunity Act]; Loveland v Leslie, Prentice-Hall Equal Opportunity Housing Reporter, par 16,509, Superior Ct, Washington, 1976 [Law Against Discrimination]; Atkisson v Kern County Housing Auth., 59 Cal App 3d 89 [HUD regulations] ; see, also, Kraft, Inc. v State of Minnesota [- Minn-, 284 NW2d 386] and Washington Water Power Co. v Washington State Human Rights Comm. [91 Wn 2d 62] for expanded definition of “marital status” with respect to antinepotism statutes).
In 1976, Attorney-General Lefkowitz, rendering an opinion with respect to section 40-e of the Insurance Law,[3] observed that “[c]ohabitation without marriage clearly involves a matter of ‘marital status’ within the meaning of *255 Insurance Law, § 40-e, which may not be used by an insurance company as a basis for discrimination” (1976 Opns Atty Gen 58, 59).
The legislative addition of “marital status” to the Human Rights Laws reflects the profound changes we have experienced in contemporary mores and the now commonplace practice of unmarried couples establishing households. Although there is little legislative history to guide us, the language of the statute is manifestly clear. This law prohibits landlords from differentiating between those who are married and those who are not married, all other facts being equal. This is precisely what landlord seeks to do. Tenant may continue to reside in her apartment with her companion if they marry. To require thát she leave because their relationship lacks the imprimatur of State or benefit of clergy is to terminate her tenancy because of her marital status.
Landlord’s argument, that the sections of the Human Rights Laws relied upon by tenant violates section 10 of article I[4] 56and the Fourteenth Amendment[5] of the United States Constitution and section 6 of article I[6] of the New York Constitution, cannot be sustained.
Legislative enactments are presumed to be constitutional (Benson Realty Corp. v Beame, 50 NY2d 994; Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415). They should remain free of judicial tampering unless shown to be arbitrary and without reasonable basis (New Orleans v Dukes, 427 US 297, 303; Matter of New York State Comm. Against Discrimination v Pelham Hall Apts., 10 Misc 2d 334).
The New York State Human Rights Law is “an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state, and in fulfillment of the provisions of the constitution of this state concerning civil rights” (Human Rights Law *256 [Executive Law], § 290, subd 2). Market relations between landlords and tenants are legitimate subjects for the exercise of this power (Benson Realty Corp. v Beame, supra; Amsterdam-Manhattan, Inc. v City Rent & Rehabilitation Admin., 43 Misc 2d 889, affd 21 AD2d 965, affd 15 NY2d 1014).
The Legislature is empowered to pass laws limiting the ability of landlords to practice discrimination in the renting of apartments. It is settled law that landlords may not discriminate against tenants or prospective tenants based on color, creed, race or religion. (Jones v Mayer Co., 392 US 409; Matter of State Comm. for Human Rights v Kennelly, 30 AD2d 310, affd 23 NY2d 722.)
Landlord’s reliance on the contract clause of the United States Constitution is misplaced. In the first instance, it is not clear that the contract clause applies to the facts of this case. However, it is beyond dispute that the contract clause does not subordinate all societal relations to the protection of private contracts. Individual contractual obligations may fall to the State’s responsibility to promote “the general good of the public” (Allied Structural Steel Co. v Spannaus, 438 US 234, 241).
Landlord’s remaining constitutional argument is equally unavailing. The due process clauses of the Federal and State Constitutions speak of “life” and “liberty” before “property” and, even when considered in conjunction with the contract clause, do not create a constitutional preference for the protection of property rights. Legislation which is reasonably designed to promote the general welfare of society is not ipso facto unconstitutional because it also affects private property rights (Modjeska Sign Studios v Berle, 43 NY2d 468, 474).
The addition of “marital status” to section 296 (subd 5, par [a]) of the Human Rights Law is well within the purview of the legitimate exercise of government to erect barriers against discrimination based on status. A prohibition against discrimination based on marital status is consistent with both evolving notions of morality and the realities of contemporary urban society, where couples *257 openly live in heterosexual and homosexual units without sanction of State or clergy.[7]
That portion of the lease attempting to sanction discrimination based upon marital status is unenforceable (Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York Human Rights Appeal Bd., 35 NY2d 371). Tenant’s motion is granted and the petition is dismissed.

. While the court held a similar lease clause enforceable, it was not asked to and did not pass upon the effect of the Human Rights Laws.

. While there are several exceptions to this statute, none are relevant to this lawsuit.

. Insurance Law, § 40-e: “Discrimination because of sex or marital status. No association, corporation, firm, fund, individual, group, order, organization, society or trust shall refuse to issue any policy of insurance, or shall cancel or decline to renew such policy because of the sex or marital status of the applicant or policyholder.”

. “No state shall * * * pass any * * * Law impairing the Obligation of Contracts”.

. “[N]or shall any State deprive any person of life, liberty, or property, without due process of law”.

. “No person shall be deprived of life, liberty or property without dué process of law”.

. Indeed, subdivision 12 of section 292 of the Human Rights Law defines family as “two or more persons occupying a dwelling, living together and maintaining a common household”.