OPINION OF THE COURT
Margaret Taylor, J.
Petitioner landlord seeks to evict respondent tenant from a rent-controlled apartment on the grounds that he was the mere licensee of the deceased tenant, and that respondent’s right to occupy the premises terminated when the deceased tenant (hereinafter Ms. Tetreault) died.
The facts of the case are as follows: Respondent, Mr. Burton, became romantically involved with Ms. Tetreault sometime prior to World War II. Social pressures against interracial marriages discouraged them from formalizing their relationship. Convinced that a permanent partnership was untenable, the couple separated. Ms. Tetreault married another man. In the late 1960’s, her spouse became gravely ill, and Mr. Burton came to their assistance.
After Ms. Tetreault’s husband died in 1968, respondent moved in with her. The partnership they maintained was akin to that of husband and wife, absent the legal for *402 mality of marriage. Respondent testified that since 1968, when he moved all of his belongings into Ms. Tetreault’s apartment, he has had no other residence. Further, he assumed financial responsibility for Ms. Tetreault and himself, although the rent checks were signed by Ms. Tetreault. When Ms. Tetreault was hospitalized one year prior to her death, Mr. Burton visited her daily, and upon her death Mr. Burton paid for her burial and funeral. In sum, the couple maintained a close and loving relationship from the time Mr. Burton moved in until Ms. Tetreault died, in 1979.
The former superintendent’s son, Mr. Milligan, testified that he helped Mr. Burton move into the subject premises in 1968. Petitioner claims that although she was aware of respondent’s presence in the apartment for the last 10 years, that she merely regarded him as Ms. Tetreault’s “boyfriend”. Mr. Burton testified that when he put his name on the mailbox it was removed. Yet, his name was placed on the mailbox by an unknown person during the time his notice of eviction was sent.
Were the couple legally married, Mr. Burton would clearly be entitled to stay in the apartment pursuant to subdivision d of section 56 of the city Rent, Eviction and Rehabilitation Regulations, which provides, in pertinent part, that: “No occupant of housing accommodations shall be evicted *** where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant.”
The issue presented is whether the above regulation also protects those who cohabited with the deceased tenant for a significant period of time in a partnership closely akin to marriage.
Petitioner principally relies on older case law, which stands for the proposition that: “Where death terminates a statutory rent controlled tenancy *** if the relict who formerly resided with the deceased is a spouse * * * or in lineal descent *** they are within the protective mantle of rent control and become successor statutory tenants.” (Cesbron v Reardon, 73 Misc 2d 715, 715-716; *403 see, also, Yates v Kaplan, 75 Misc 2d 259.) Further, insofar as the above-cited cases involved the attempts of a nephew (Cesbron v Reardon, supra), and a housekeeper (Yates v Kaplan, supra), to take over a rent-controlled apartment of a deceased tenant, they are easily distinguishable on their facts from the instant case.
The law must keep abreast of changing moral standards. Accordingly, recent case precedent reflects a recognition of the rights of unmarried partners. As Judge Elliot W-ilk stated in Hudson View Props, v Weiss (106 Misc 2d 251, 256-257): “A prohibition against discrimination based on marital status is consistent with both evolving notions of morality and the realities of contemporary urban society, where couples openly live in heterosexual and homosexual units without sanction of State or clergy.”
Directly on point with the case at bar is Rutar Co. v Gensuke Yoshito (Civil Ct of NY, No. 53Q42/79). Respondent in that case had cohabited with the deceased tenant for many years as partners, and sought to maintain possession of the rent-controlled premises after his partner died. In finding for the respondent, Judge Shirley Fingerhood stated that: “Although cohabitation for 33 years does not constitute common-law marriage in New York, cohabitation for a number of years cannot be distinguished from marriage for all purposes. Section 56(d) of the New York City Rent Regulations provides that famT ily members of a tenant may not be removed from their homes in rent-controlled apartments upon death of the tenant. The rationale for that rule does not permit a distinction to be made between a bereaved respondent and a widower with a marriage certificate.” (Emphasis added.)
This court adheres to the reasoning and holding in Rutar. However, each case should be scrutinized individually to determine whether a bereaved partner is lawfully entitled to possession of a rent-controlled apartment, pursuant to subdivision d of section 56 of the city Rent, Eviction and Rehabilitation Regulations. An appropriate standard by which to analyze each case could *404 be similar to the one employed in common-law States to determine if a common-law marriage exists.
The first factor would be the presence of mutual consent — that is, the couple agrees to act as husband and wife and to enter into an exclusive and permanent relationship.
Secondly, there must be proof that the agreement was consummated by constant cohabitation for a significant period of time. Some jurisdictions which recognize common-law marriage require that the couple hold themselves out to the rest of the world as husband and wife (see Am Jur 2d, Marriage, § 51). This requirement is anachronistic and therefore not necessary in light of the burgeoning number of unmarried couples openly living together, and the growing acceptability of such arrangements. (For example, an eminent sociologist recently denominated the parties in these arrangements as “quasis” or “proto-marital parties”.)[1]
With respect to the instant case, the court finds that respondent’s relationship with Ms. Tetreault meets the afore-mentioned indicia and that respondent is therefore entitled to a judgment of possession. The quality of his relationship with Ms. Tetreault, and the quantity of time they spent together in a close and loving relationship is such that it would be unfair and discriminatory to evict him because he lacks a marriage license.

. Professor David Reisman, author of The Lonely Crowd, and Professor Emeritus at Harvard University in a rare recent interview (New York Times, Dec. 14, 1980, p 102).