OPINION OF THE COURT
Ferdinand M. Pellegrino, J.
This proceeding was commenced to recover possession of respondent’s apartment, upon the alleged ground that it is being occupied by a person other than a member of tenant’s immediate family.
At the outset of the trial, respondents moved to dismiss the proceeding upon the grounds that the relevant portions of the lease violate certain human rights laws which prohibit discrimination on the basis of marital status.
This motion was denied.
The petitioner called Marlene Ringelheim, who testified substantially: that she has been a tenant in 2F since July 1, 1973; that one Peggy Hoskey, not related by blood or marriage, moved into the apartment, and have been living together since July, 1979; that they continued to occupy the apartment together; that she informed Morty Sohn, the president of the petitioner corporation, that Ms. Hoskey was her sister who occasionally remained in 2F; that they opened a joint checking account, that both names were placed on the mail box in the building; that the utilities are *285 in the name of the prime tenant; and, finally, that both females have developed a “warm and loving relationship” between themselves.
Peggy Hoskey, testified substantially: that she resides in 2F, and moved therein, January, 1979; that she discussed repairs with the employees of the building; that the superintendent, Angel, did work in 2F; that she worked in the neighborhood, and returned to the apartment daily for lunch; that she was greeted by the doorman, and never refused admittance; that she receives her mail and other deliveries at the subject building; that she is in no way related by blood or half blood to the tenant; and, finally, that Ms. Ringelheim and she live together as a couple.
Angel Cordero, testified substantially: that he is the superintendent of the subject premises; that he knows both occupants of 2F; that he has observed Peggy Hoskey in the premises for one year; that he has been in 2F for repairs; that his duties are of maintenance; that he has no managerial duties; and, finally, he never mentioned to Morty Sohn of Ms. Hoskey’s occupancy.
Herbert Kaufman, testified substantially: that he is the lobby attendant; that he knows Ms. Hoskey; that he says “hello”; that he opens the door for her; that he receives packages for her; and, finally, he never notified management of her occupancy.
Morty Sohn, testified substantially: that the reasonable value of the apartment is $500 per month; that prior to March 11, 1981 he had no knowledge of Ms. Hoskey’s relationship to the tenant, except that she was introduced as her sister; that there are 169 apartments in the building which are complimented with eight employees; that the rents are on a computer; that all checks are deposited into a lock box; that if the amount on the check corresponds to the rent bill, it goes through for negotiation; and, finally, the checks are never seen by management.
The court will initially consider the defense of waiver. The facts in this proceeding are substantially identical to those in Ilfin v Gatto (NYLJ, Nov. 26, 1979, p 6, col 1). See, also, Le Tam Realty Corp. v Hand (NYLJ, July 16, 1980, p 10, col 2) affirming this court. In both cases the law of *286 waiver is fully discussed, and what must be established in order to charge a party with waiver.
In the case at bar, in applying the facts as adduced in this trial together with the applicable law as pronounced in the above cases, there was a complete failure of proof by the respondents to indicate either the landlord’s knowledge, consent, or acquiescence of Peggy Hoskey’s unauthorized occupancy of the tenant’s apartment.
The remaining, and most important aspect of this case to be determined by this court, is whether Peggy Hoskey is a member of Marlene Ringelheim’s immediate family, both of whom are lesbians, and entitled to remain in the subject apartment as such.
The position of the respondents is untenable.
This court in Matter of Perl v Saul (NY City Civ Ct, NY County, March 26, 1979, affd NYLJ, Sept. 26, 1979, p 10, col 5, app den) held in part: “This court has researched the question, and has been unable to find any authority that holds, homosexuals living together constitute a family unit.”
Furthermore, this court rejects the holding of Hudson View Props. v Weiss (106 Misc 2d 251). To hold otherwise, this or any other court would lend itself to the ultimate destruction of the family unit, the foundation of society.
Subdivision (b) of section 54 of the amended Code of the Real Estate Industry Stabilization Association of the City of New York defines the term immediate family which includes a husband, wife, daughter, son, stepson, stepdaughter, father, mother, father-in-law or mother-in-law.
The New York City Rent and Rehabilitation Law (Administrative Code of City of New York, § Y51-3.0, subd e, par 2, subpar [i], cl [7], subcl [v]) defines the term “related persons” as a parent, grandparent, child, stepchild, grandchild, brother or sister of the tenant or of the tenant’s spouse or the spouse of any of the foregoing.
This court determines that lesbians living together do not constitute a member of one’s immediate family.
Accordingly, the petitioner is entitled to a final judgment of possession. The warrant is issued, execution *287 thereof stayed through September 30, 1981, on condition that respondent pays to the petitioner any arrears for use and occupancy at the rate previously payable as rent, that may have accrued since entry of judgment herein; thereafter pays to the petitioner at the same rate for use and occupancy on each subsequent rental due date.
Finally, the court determines that the attorney for the petitioner is entitled to attorney’s fees of $250, to be paid as additional rent.