OPINION OF THE COURT
Richard Lee Price, J.
Respondents’ motion to reargue is granted and, upon reconsideration, respondents’ motion to dismiss pursuant to CPLR 3211 (subd [a]) is hereby granted. Petitioner’s cross motion for summary judgment is denied.
PROCEDURAL BACKGROUND
The petitioner landlord in this case, Yorkshire House Associates (hereinafter referred to as Yorkshire) instituted a holdover proceeding against the respondents on September 11,1981. On November 9,1981, the respondent tenants made a motion to dismiss the holdover petition pursuant to CPLR 3211 (subd [a], par 1). That motion was denied in a decision of this court dated January 6, 1982. Respondents now seek to reargue and/or renew that motion, on the basis that certain facts and arguments were not considered by this court in rendering the January 6 decision. The petitioner cross-moves for summary judgment.
THE ACCEPTED FACTS
On September 16,1978, the petitioner Yorkshire and the respondent Michael Lulkin entered into a landlord-tenant *41 relationship by becoming parties to a lease for premises located at 401 East 81st Street, New York, New York. Ms. Banks was apparently present during the negotiations for the lease and participated in completion of the lease application. Ms. Banks, however, did not sign the lease.
This initial lease was to continue for a period of two years and was in fact renewed on October 26, 1980. This second lease is due to expire on October 31, 1982.
At the time of the execution of the leases, respondents Lulkin and Banks were not married to one another. (Apparently they are not now married to one another.) The landlord claims that the tenants represented at the time of lease execution that they were in fact married to one another. Respondents deny this allegation. For the purposes of this motion to dismiss the landlord’s petition, this court will deem the landlord’s allegation true.
Respondents Lulkin and Banks continued to live together in the apartment for approximately three years. Somewhere around that time the respondents separated, and Mr. Lulkin vacated the premises, leaving Ms. Banks in sole possession. On August 5, 1981 the petitioner served Mr. Lulkin with a notice to cure and a notice of termination.
Petitioner now seeks to physically evict respondent Banks and technically evict respondent Lulkin on the grounds that Mr. Lulkin, the only signatory on the lease, has violated a substantial obligation of the tenancy in permitting the apartment to be occupied “by persons other than his immediate family, without the consent of the landlord.” This occupancy restriction is contained in Mr. Lulkin’s lease.
FINDINGS OF LAW
I. Reargument
A court may, upon presentation of additional evidence or argument, reconsider a prior decision. Though rare, a court may also reverse itself in the interests of justice if it has failed to consider a vital matter or argument, either through its own or another’s mistake. In this case, the court was unaware of the existence of the respondent’s reply papers, dated November 7,1981, and filed November *42 9,1981, and considers them vital to a proper determination of this motion. On this basis the court grants respondents’ motion to reargue.
II. Marital Status Discrimination
The petitioner, in its papers, claims that it would not have rented to the respondents if it had known that they were not married. Clearly, if the petitioner had in fact refused to rent to the respondents because of their unmarried status, this refusal would have constituted a violation of section 296 (subd 5, par [a]) of the Executive Law* (Human Rights Law) (if proven). That statute provides, in pertinent part:
“5. (a) It shall be an unlawful discriminatory practice for the owner * * *
“(1) To refuse to sell, rent, lease * * * a housing accommodation because of * * * marital status of such person or persons.
“(2) To discriminate against any person because of his * * * marital status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation”.
Clearly, this human rights legislation prohibits not only discrimination on the basis of marital status at the leasing or selling stage but also with respect to the terms and conditions contained within the lease.
The foremost case on this issue is Hudson View Props. v Weiss (86 AD2d 803), wherein the Appellate Division reversed the Appellate Term (109 Misc 2d 589), indorsed the dissenting opinion of Mr. Justice Asch of that court and upheld the lower court decision (106 Misc 2d 251 [Wilk, J.]). In so doing, the court adopted the holding (106 Misc 2d 251, 257, supra) that a lease clause restricting occupancy to persons in the tenant’s immediate family, to the exclusion of a lover of the tenant, was unenforceable as discrimination based on marital status.
In Hudson View Props., the tenant, a widow who had lived in her apartment for 14 years (and who was not an original signatory to her lease), invited her lover to move *43 into her apartment and live with her. The landlord notified the tenant that unless she and her lover got married he would seek to evict her pursuant to the lease clause for violation of a substantial obligation of the tenancy. The tenant refused to marry, and the landlord proved himself true to his word.
The lower court, in dismissing the holdover petition brought against Ms. Weiss (the tenant), stated that “[the Human Rights] law prohibits landlords from differentiating between those who are married and those who are not married” (Hudson View Props. v Weiss, supra, p 255).
The principles of Hudson View Props. have been reaffirmed both by the New York Commission on Human Rights, in Mishalove v 109 St. Marks Place (commission new release, Nov. 13, 1981), and the Supreme Court, New York County in Munroe v 344 East 76th Realty Corp. (113 Misc 2d 155 [Price, J.]). Both cases involved an attempted enforcement of an occupancy restriction contained in a lease.
In the present case, the court is confronted by a more vexing situation. While the facts surrounding Ms. Banks’ tenancy and the landlord’s acceptance of this tenancy appear stronger than in any other marital status case so far (Ms. Banks has lived in the apartment for three and one-half years and has lived there since the inception of Mr. Lulkin’s tenancy), the fact remains that Mr. Lulkin is no longer residing there.
In his dissent from the Appellate Term decision Hudson View Props. v Weiss (109 Misc 2d 589, 597, supra), Mr. Justice Asch stated: “Whether, if Ms. Weiss left the apartment, Wertheimer [the lover] could maintain his possession is a knotty question which need not be addressed here.”
That “knotty” question has now arisen and this court must address it.
Mr. Justice Asch, for guidance on this issue, alluded to Matter of Herzog v Joy (74 AD2d 372). That case involved an attempt by a landlord to evict the sister of a tenant under section 56 of the New York City Rent, Eviction and Rehabilitation Regulations, in an effort to decontrol the *44 rent-controlled apartment. The court, in that case, held that the “nonsigning” sister could remain in the apartment even after the “signing” sister had moved, stating (p 377): “the test of tenancy under primary residence decontrol is not whether the apartment is occupied by the tenant of record who initially signed the lease but whether it is occupied by the person entitled to possession.”
In Herzog the court held for the nonsigning sister, noting that she was part of the immediate family of the tenant and had been residing in the apartment with the tenant for about one year.
It is beyond cavil that if respondents Lulkin and Banks were married and subsequently became separated, Ms. Banks would be allowed to remain in the apartment even if she had not signed the lease. It is clearly discriminatory for the landlord to seek to evict Ms. Banks solely because she is not or was not married to the tenant Lulkin. This court holds that Ms. Banks is “entitled to possession” of the apartment as a result of her relationship to the signing tenant and her cohabitation with the signing tenant for a period of approximately three years.
It is once again necessary to note that landlords cannot, in this day and age, continue to ignore and to refuse to accord legitimacy to couples living together without the officialization of marriage. Couples (as noted by Judge Wilk in Hudson View Props. v Weiss, 106 Misc 2d 251, supra), both heterosexual and homosexual, are increasingly turning to “nonmarital” living arrangements, for a variety of reasons. These relationships are frequently no more temporal than marital relationships, and many non-marital relationships may last longer than their marital counterparts.
This decision works no hardship on the landlord. The landlord retains rights against tenant Lulkin similar to rights the landlord would possess against a sublessor. It is a well-established tenet of the law of sublease that the original lessee remains liable to the landlord under the lease. (Tefft v Apex Pawnbroking & Jewelry Co., 75 AD2d 891.)
Petitioner’s reliance on the recent case of Young v Carruth (113 Misc 2d 586), is misplaced. In that case, the Ap *45 pellate Term held that the mistress of the owner of an apartment could no longer live in that apartment once the owner-lover had died. The woman, though she had lived in the apartment for 15 years, had never signed a lease and therefore the court found in favor of the man’s estate. This court rejects petitioner’s reliance on this case for two reasons: (1) the issue of violation of the Human Rights Law was not raised in that case until the appellate level, and (2) the couple in Young were involved in an “extramarital” relationship rather than simply a “nonmarital” relationship, and possibly the court was affected by this to the extent that it sought, above all, to protect the owner’s “legitimate” beneficiaries. It is also noted by this court that Mr. Justice Asch also dissented from that opinion.
In finding this violation of the Human Rights Law, this court cannot avoid commenting on certain problems that are bound to arise. These problems will relate to the lower court’s use of the terms “close and loving” to describe the relationship between the tenant and her lover, and the apparent intention of the human rights legislation to protect persons involved in “quasi-marital” relationships, whether heterosexual or homosexual.
Some day, sooner or later, a landlord opposing a motion to dismiss is going to allege that the parties (tenants) do not maintain a “close and loving” relationship, but are merely friends or roommates. This allegation, if controverted, will give rise to an issue of fact which will preclude dismissal and “put the parties to their proof.”
Here the distasteful problem arises — how do individuals prove a “quasi-marital” relationship? How does a landlord disprove it? The issue gives rise to difficulties of both an evidentiary and a constitutional nature.
This court suggests that the potential problems might be solved by allowing the sworn statement of the tenants, affirming the existence of a “quasi-marital” relationship, to give rise to an irrebuttable presumption that such a relationship does exist. An irrebuttable presumption may be utilized where public policy demands that certain lines of inquiry be avoided. (Derby v Prewitt, 12 NY2d 100.) Clearly this is such a situation.
*46 III. Motion to Dismiss
Respondents bring this motion to dismiss pursuant to CPLR 3211 (subd [a], par 1). It provides for dismissal where certain documentary evidence precludes an issue to be raised as to its verity and conclusiveness. (Lederer v Wise Shoe Co., 276 NY 459.) No such documentary evidence exists in this case and dismissal cannot be predicated on CPLR 3211 (subd [a], par 1). Dismissal may be, and is, called for pursuant to CPLR 3211 (subd [a], par 7), for failure to state a cause of action. Even if the movant has failed to specify the correct provision, the court has the power to so consider it and, if called for, may dismiss an action pursuant to a provision not argued by the movant. Wolfe v Bellizzi, 58 Misc 2d 773.)
CONCLUSION
This court does not deny that the profession of “landlord” in this city is not as “rewarding” or as “profitable” as it once was. Landlords are inundated by an overwhelming volume of rent and eviction regulations, as well as restrictions on their ability to refuse to renew leases. This decision is not intended to condone behavior, occasionally engaged in by tenants, which seeks to circumvent what rights a landlord does possess. But neither will this court condone behavior engaged in by a landlord who merely seeks an excuse to force a rent increase on a tenant, evict a tenant, or fail to renew a tenant’s lease. This is especially true when the excuse offered by the landlord flagrantly violates the human rights of a person or a class of individuals.
So stated, this court grants the respondent tenants’ motion to dismiss and denies the petitioner landlord’s cross motion for summary judgment.

 Section 296 (subd 5, par [a]) of the Executive Law and section Bl-7.0 (subd 5, par [a]) of the Administrative Code of the City of New York.