**In the Matter of Phillip OWENS d/b/a The Avocado Tree, Debtor.**

**Bankruptcy No. 83 B 10129(PBA).**

United States Bankruptcy Court, S.D. New York.

June 10, 1983.

---

Novick & Edelstein, P.C., New York City, for Zvi and Fannie Grunberg, landlord; Sol Wasserman, New York City, of counsel.

Paulette Owens, New York City, for debtor.

## DECISION AND ORDER ON LANDLORD'S MOTION

PRUDENCE B. ABRAM, Bankruptcy Judge.

Phillip Owens d/b/a The Avocado Tree filed a Chapter 11 petition with this court on February 17, 1983. Owens operates a small grocery store at 353–355 Columbus Avenue, New York City. On February 18, 1983, Owens applied for and obtained a specific injunction against the enforcement of a warrant of eviction obtained by Zvi and Fannie Grunberg, the landlord of the store premises.

The Grunbergs filed a motion on February 25, 1983 seeking a lifting of the automatic stay contained in Bankruptcy Code § 362 and the February 18 injunction to permit them to dispossess Owens from the store premises.

Owens' most recent lease for the 825 square-foot store premises expired on August 9, 1981 and the monthly rental was $1,300. The lease contained no renewal option. Several months prior to the expiration of the lease, Owens sought a renewal lease. When no renewal offer was forthcoming and on the basis of facts not of record, Owens filed a complaint with the New York State Human Rights Commission alleging that the Grunbergs had refused a renewal lease to him because he is black. In early June 1981, the Human Rights Commission found probable cause existed that the landlords had engaged in discriminatory practices. On June 15, 1981 the Grunbergs made a written offer to enter into a new lease for the store premises at a rental of $6,000 per month. The letter sought Owens' response within five days. Owens did not respond within five days.

The lease expired in August 1981 and Owens continued in occupancy. The Grunbergs instituted various state court actions seeking to evict Owens. It is uncontested that Owens, prior to the Chapter 11 filing, had paid no monies to the Grunbergs since the lease expired nor had funds been placed in an escrow account, although tender may have been made and refused. Owens has defended the various state proceedings by alleging, *inter alia* that the $6,000 monthly offer is so commercially unreasonable as to be tantamount to no offer at all. The Human Rights Commission proceedings has not progressed beyond the issuance of a finding of probable cause.

As put to the Bankruptcy Court, the matter is thus: was the offer of a $6,000 a month renewal lease within the realm of commercial reasonableness and thus economically rather than racially motivated. If the offer is found to be tantamount to no offer at all because it is commercially unreasonable, this court would be forced to allow the Human Rights Commission complaint to proceed since resolution of that matter would be essential to determine whether a renewal lease was required. Under ordinary circumstances, a landlord of commercial space has no obligation to offer a renewal lease. *Mobil Oil Corp. v. Rubenfeld,* 48 A.D.2d 428, 370 N.Y.S.2d 943 (1975), *affirmed* 40 N.Y.2d 936, 390 N.Y.S.2d 57, 358 N.E.2d 882 (1976). A landlord must, however, obey "supervening statutory proscription[s]" when dealing with his property. *Kramarsky v. Stahl Management,* 92 Misc.2d 1030, 1032, 401 N.Y.S.2d 943, 945 (1977). The anti-discrimination policy embodied in the New York Human Rights Law is such a proscription. This court is of the opinion that if the renewal offer is commercially reasonable that would be dispositive of the controversy on Owens' right to possession and a renewal lease. Owens has recently added an additional element to the equation by sending a letter on March 2, 1983 purporting to accept the June 15, 1981 offer for a $6,000 a month lease.

The matter was tried before the court on April 15 and May 2 and 5, 1983.

Eleven witnesses testified, including experts for both sides. On the basis of the testimony, this court has concluded that the $6,000 offer represented an offer at the then prevailing market rental and thus was commercially reasonable.[1] The court has further concluded that the June 15, 1981 offer made by the Grunbergs had terminated and was not capable of being accepted twenty-one months later by the letter of March 2, 1983.

A discussion of the factual basis for the court's finding on the reasonableness of the $6,000 rental figure is in order. The Owens' store is located on the east side of Columbus Avenue in the block immediately south of the American Museum of Natural History. In recent years Columbus Avenue in this area of the sixties and the seventies has undergone a revitalization. In the last few years it has become a prime area and attracts some of the highest rentals on the West Side, due in part to its location one block west of Central Park West. The Owens' store was two stores as recently as a few years ago. Owens originally occupied only one of the stores and took over the other store at some point during the six years he occupied the premises under two leases prior to the lease which expired August 1981. The other commercial tenants in the Grunbergs' building are the Nikki and Kelly restaurant, which occupies the corner closest to the Museum, and two Chinese restaurants located on either side of the Owens' store.

At trial, the landlord proffered much testimony directed at attempting to demonstrate receipt of an actual offer for the Owens' premises of $6,000 a month from the tenant of the larger of the two Chinese restaurants. Although an actual offer would no doubt be the best evidence of the commercial value of the Owens' store, this court has chosen to disregard the testimony regarding the offer. There are suggestions that the offer was either not real or was solicited by the Grunbergs solely for the purposes of this litigation. Owens subpoenaed Mary Shieh, the alleged offeror, but she failed to appear. The court has determined that it need not consider this problematic evidence in light of the substantial, credible evidence proffered from the independent expert witnesses and real estate witnesses.

Ralph H. Marx testified as an expert witness for the landlord. Mr. Marx has prepared countless appraisals, testified in thousands of cases and has a lifetime of familiarity with New York City real property values. An appraisal report with respect to the rental value of the Owens' store premises prepared by Marx was admitted. The report contains a number of photographs, including ones of the Grunbergs' blockfront and the Owens' store, as well as photographs of a number of properties asserted to be comparables in Owens' pre-trial memorandum. It is apparent from the photographs that Owens' store front has not been recently modernized or renovated. Marx stated that his inspection of the store found it to be

"in shabby mercantile condition. The merchandise displayed and the ambiance of retailing was more in keeping with the days when the elevated structure was still rumbling up and down Columbus Avenue." Report at 10.

Mr. Marx concluded that in August 1981 the fair market rental value for the Owens' store was $90 per square foot which would translate into $6,000 per month or $72,000 per annum.

Owens' expert, J. Yarmus, who is an appraisal review expert, testified to a number of methodology defects in the Marx report, such as a failure to particularize whether comparables had a basement and the like. Yarmus is not a real estate appraiser; his professional background is in engineering and his expertise lies in the area of the engineering analysis of buildings as well as

---

1. This same issue was tried in the state court on February 17 or 18, 1983. The judge concluded on the basis of the evidence before him that $6,000 was commercially reasonable. Because the trial was held after the petition was filed and thus was in violation of the automatic stay, this court refused to take cognizance of the decision and required the matter to be tried *de novo*. Owens thus had a fair opportunity in this court to correct whatever deficiencies he felt there to have been in the earlier trial.

in reviewing appraisals prepared by others. Although this court takes cognizance of the "scientific" flaws in the Marx report, appraising is a matter of judgment, not an exact science, and Yarmus conceded that he was not saying that Marx did not use judgment.

Yarmus was of the view that a rental increase for the Owens' premises from $1,300 to $6,000 was unconscionable and attached to his report, which was admitted into evidence, are various materials respecting bills under consideration by the New York City Council which would impose a form of rent control on commercial properties. In rejecting the $6,000 rent as commercially reasonable, Yarmus was in this court's view making a statement about business morality, not about actual market conditions for the property.

Marx' testimony was credible and backed by years of experience as well as familiarity with the particular area. In addition, it was supported by the testimony of real estate brokers familiar with property values in the area.

The $6,000 rent for the Owens' store is in the range of the rentals for the Nikki & Kelly Restaurant, which entered into a lease on October 9, 1981 beginning at $71.13 per square foot escalating to $106.69 per square foot as well as that for the Hunan Restaurant, which is immediately next to Owens' store, whose lease signed July 1, 1982 has a rental of $79.54 per square foot the first year with escalations every year thereafter. Being on the same blockfront these would be the most comparable properties in terms of location.

Mark Terk of J. Rodman & Associates, a real estate brokerage company, was of the opinion that the rental value of the Owens' store in August 1981 was $90 to $100 per square foot and that it was now $100 to $120 per square foot. He stated that the property would rent for more if it was redivided into two stores than if rented as a single store since smaller units rent for a greater amount per square foot. Although Mr. Terk had been with J. Rodman for only a short period, he has a number of years experience in the real estate area. Another witness from J. Rodman placed the rental at $80 to $100 per square foot. A sales person with Williams Real Estate testified to a number of rentals on Columbus Avenue in the range of $75 to $125 per square foot.[2]

The situation Owens finds himself in is unfortunate. The economic realities of Owens' business are that it apparently cannot support a $6,000 rental expense. However, the commercial reality is that the lease expired in August 1981 and contained no renewal option. It is only the charge of discrimination that has afforded to Owens the possibility of any renewal lease.

■ This court finds that Owens' attempt to accept the June 1981 offer[3] twenty-one months later in March 1983 was not timely or effective. In the absence of an express limitation, an offer continues for a reasonable time. 21 N.Y.Jur.2d, Contracts § 40. The June 15, 1981 requested a reply in five days. Even if that did not fix an express limitation on the duration of the offer no timely acceptance occurred and the offer was terminated when it was rejected by the words and acts of Owens.

> "Any words or acts of the offeree indicating that he declines the offer, or which justify the offeror in inferring that the offeree intends not to accept the offer or give it further consideration, amounts to a rejection." 21 N.Y.Jur.2d, Contracts § 42 at 461.

Virtually from the moment of receipt of the offer, Owens has evinced an unwavering rejection of it. Indeed, in colloquy with the court, counsel for Owens left the court with the distinct impression that the offer was

---

**2.** Although Yarmus expressed surprise that all the landlords' witnesses testified to the same value, this court's careful review of the record fails to reveal any remarkable uniformity of opinion among the landlords' four real estate witnesses as each reached a different conclusion and had different reasons for doing so.

**3.** Technically since the June 15, 1981 letter contemplates a further contract, it may not be such an offer as is capable of being converted into a contract by acceptance. See 21 N.Y. Jur.2d, Contracts § 35. However, resolution of this issue is irrelevant in light of the court's determination that the offer was terminated when rejected.

accepted in March of 1983 only because of a belief that the bankruptcy court could or would act to reduce the rental.

There is no property of the estate to protect as the lease has expired of its own terms long before the commencement of the Chapter 11 case. The debtor can have no equity in an expired lease nor can it be considered necessary to an effective reorganization. *In re Physique Forum Gym, Inc.,* 27 B.R. 691 (Bkrtcy.D.Md.1982). See also *In re GSVC Restaurant Corp.,* 10 B.R. 300 (S.D.N.Y.1980); *In re Mimi's of Atlanta,* 5 B.R. 623 (Bkrtcy.N.D.Ga.1980), *aff'd* 11 B.R. 710 (D.C.1981); and *In re Victory Pipe Craftsman, Inc.,* 8 B.R. 635 (Bkrtcy.N.D.Ill. 1981). Therefore the automatic stay and this court's injunction of February 18, 1983 should be vacated.

Owens is directed to vacate the premises forthwith and in any event no later than 20 days from the date hereof.

SO ORDERED.

Mark S. Sigmon, Bethlehem, Pa., for defendant Cohn.

Benjamin E. Zuckerman, Norristown, Pa., for Plainfield Tp.

Raymond J. DeRaymond, Easton, Pa., for Richard T. Rutt.

David F. Dunn, Allentown, Pa., for debtor.

E. Jerome Brose, Easton, Pa., for Donald and Margaret Markley and Preston Moritz.