OPINION OF THE COURT

Per Curiam.

Order dated March 27, 1980 is modified to the extent of reversing so much thereof as determined the lawful rent for the subject premises to be $60, and, as so modified, affirmed, without costs.
This nonpayment proceeding was instituted against one Michael Bassett to recover one .month’s rent of $175 pursuant to a written rental agreement. An answer was served by Bassett, joined by one Robert Fraser (RPAPL 743) in which it is alleged that Fraser, not Bassett, is the legal tenant of the premises at a rent of $60 per month; that *120 Fraser never surrendered his leasehold; and that Bassett, his roommate, executed the lease in question under duress and threat of eviction. The answer requested dismissal of the petition and a declaration of Fraser’s legal tenancy at a rental of $60.
The trial testimony of Bassett and Fraser discloses that Fraser moved into Apartment No. 10 at 187 Chrystie Street, Manhattan, in May, 1976, having taken over the apartment from its former occupant Faye Coppin. He paid the monthly rent of $60 to Coppin, until February, 1979. Fraser, a seaman, was away from the apartment for months at a time when on a sea voyage. In September, 1978, Michael Bassett, a former schoolmate, moved in with Fraser. In January, 1979, the present landlord bought the building. At that time, Bassett met Charles Cohen, vice-president of the landlord corporation, and Bassett then informed Cohen that he (Bassett) occupied Apartment No. 10 with the tenant Fraser. Upon returning from a voyage in February, 1979, Fraser introduced himself to Cohen, who requested that Fraser thereafter pay the rent directly to him or to the resident superintendent Lucy Graham. Before shipping out again in May, 1979, Fraser made two rent payments of $60 each to Graham in the form of teller’s checks of the Dry Dock Savings Bank. Bassett made three or four payments with his own checks. Fraser returned in late July, and after several days left for New Jersey to help a friend build a house. Between August and October he spent most of his time in New Jersey, in this pursuit and also taking a welding course in Ocean City, New Jersey. While there he received a call from Bassett who informed him that the landlord had threatened him with eviction. Fraser called both the landlord and landlord’s attorney, Small, advising them that he was still living in the apartment and that his furniture and belongings were, still there. Bassett had received a letter from the landlord dated September 14,1979 requesting that he enter into a lease at a rental of $175 monthly, or be subject to eviction. Bassett claimed to have told the landlord that Fraser was the tenant, and that he still resided in the premises between sea voyages. Nevertheless, Bassett executed a lease with the landlord, allegedly under duress and fear of eviction.
*121 The testimony of Charles Cohen, on behalf of the landlord, failed to contradict Fraser and Bassett’s account. He acknowledged that Fraser was the tenant in Apartment No. 10, and in fact indicated as much in filing for a statutory decontrol premised on Fraser’s purported surrender of the apartment.
The court determined, inter alia, that Fraser never abandoned the apartment; that a month-to-month tenancy of a rent-controlled unit had been created when the landlord accepted rent from Fraser; that a lease between the landlord and Bassett, in derogation of Fraser’s rights in the premises, is a nullity, and that the lawful rent for the premises is $60.
Landlord appeals on the ground that the court lacked jurisdiction to rescind or reform the lease with Bassett, citing section 213 of the New York City Civil Court Act (CCA) as conferring such jurisdiction for rescission or reformation on the court effective only from September 1, 1980, a date subsequent to the determination of this proceeding in March, 1980. Moreover, landlord disputes the court’s authority to fix the rent on the subject apartment at $60 per month, as being vested exclusively in the Office of Rent Control subject only to judicial review of a final determination of that administrative agency.
We conclude that the court had jurisdiction to adjudicate the issues raised in the pleadings: i.e., the allegations in the petition of the obligations of the tenancy of Michael Bassett, and the defense of the respondents that Fraser is the tenant in interest, not having surrendered his leasehold. The equitable defense of duress and threat of eviction in the execution of the lease was properly interposed in the answer (RPAPL 743; Dimou v Cusanelli, 69 Misc 2d 592; Orange County Dev. Corp. v Perez, 67 Misc 2d 980; Mico Mgt. Corp. v Scaraggi, 59 Misc 2d 984). The issue in any summary proceeding for possession is whether landlord is entitled to such possession, and any equitable defense offered by the tenant to show that landlord is not entitled to possession must be considered (Great Park Corp. v Goldberger, 41 Misc 2d 988). Fraser’s right to intervene is authorized by RPAPL 743, which provides in pertinent part: “the respondent, or any person in possession or claim *122 ing possession of the premises, may answer, orally or in writing.”
Landlord’s acceptance of rent from Fraser created a month-to-month tenancy. To terminate Fraser’s tenancy, landlord was required to serve a 30-day notice of termination (Real Property Law, § 232-a), unless a surrender of the premises could be shown, either by Fraser giving notice of his intention to quit, or by abandoning possession during the term in such manner as to indicate his intention to yield his interest to the landlord. “When a tenant relinquishes possession of demised premises, and it is established that the landlord has resumed possession thereof for his own benefit, the courts have held that a surrender by operation of law has resulted, and the term terminated. But, generally, whether the landlord has done so is a question of fact dependent on all the circumstances.” (2 Rasch, New York Landlord and Tenant [2d ed], § 870, pp 315-316.)
Fraser’s uncontroverted testimony established that he advised both the landlord and his attorney that he had not vacated the premises and continued in possession. Without service of the statutory notice to terminate the month-to-month tenancy, Fraser’s interest in the premises could not be extinguished by the Bassett lease. Lacking jurisdiction prior to September 1,1980 to rescind the Bassett lease, the court is authorized, nevertheless, to refuse to enforce it “if the court as a matter of law finds a lease or any clause of the lease to have been unconscionable at the time it was made” (Real Property Law, § 235-c). Furthermore, and more significantly, a court may find a lease unenforceable upon the ground that a landlord is precluded from entering into a binding lease by virtue of a prior and continuing tenancy in the subject premises such as the case at hand.
The court questioned Bassett’s role in entering into the lease while professing at the same time to preserve the interests of Fraser. Whether Bassett succumbed to duress in fear of eviction or merely sought to gain status as the recognized tenant, the result is the same. “As a general rule, when a person occupies any relationship of trust or confidence to a tenant, and by virtue of such relationship is enabled to get a new lease from the landlord ‘behind the *123 back’ of the tenant, equity will step in and protect the tenant’s expectancy of renewal. Such person who thus obtains a new lease by taking inequitable advantage of his position or duty will be deemed to have obtained the new lease wrongfully, and in fraud of the tenant.” (1 Rasch, New York Landlord and Tenant [2d ed], § 294, p 384; Mitchell v Reed, 61 NY 123, 130.)
Finally, while under certain circumstances the court has concurrent jurisdiction with the Office of Rent Control to determine the lawful rent for a given premises, we conclude that the record of transfers of the apartment in question to be such that the administrative expertise of the Office of Rent Control is required to determine the lawful rent of that apartment.
Concur: Dudley, P. J., Tierney and Riccobono, JJ.