OPINION OF THE COURT
Lewis R. Friedman, J.
This court, pursuant to RPAPL article 7-A, appointed an administrator for a loft building which contains both commercial and residential units. The instant motion by the owner *805 seeks to have the court cancel three leases entered into by the administrator shortly after her appointment. The court has denied a prior motion for the same relief. The instant motion, denominated one for reargument and renewal, presents arguments and questions not adequately addressed before. The three lessees have now been served with the motion; each has appeared and opposes the request relief on the merits. The motion for reargument and renewal is granted.
This motion presents serious questions, which have not been discussed in the reported cases, concerning the power of this court to supervise and oversee the conduct of article 7-A administrators appointed by it.
JURISDICTION
A threshold question, not directly raised by the parties, concerns this court’s power to cancel a lease. The general rule is that, except as specifically permitted (e.g., CCA 203 [f], [g], [h]), the Civil Court may not grant rescission or cancellation. (Cf., O’Frias v Melton, 32 AD2d 1046, affd 27 NY2d 638; Gingold v Empire Mut. Ins. Co., 72 Misc 2d 588.) The broad power resides in Supreme Court. CCA 212 provides that "the court shall have all of the powers that the supreme court would have in like actions and proceedings”. The cases hold that section 212 applies only where there is jurisdiction in the Civil Court in the first instance. (Arroyo v Rosenbluth, 115 Misc 2d 655; Matter of Voccola v Shilling, 88 Misc 2d 103, affd 57 AD2d 931; Kwoczka v Dry Dock Sav. Bank, 52 Misc 2d 67.)
Thus, prior to 1980, rescission of leases was only available in this court as an equitable defense, in part as an outgrowth of the 1976 addition of Real Property Law § 235-c (L 1976, ch 828), relating to unconscionable leases and lease clauses. (Cobert Constr. Co. v Bassett, 109 Misc 2d 119, 121 [App Term, 1st Dept].) Section 213 was added to the New York City Civil Court Act (L 1980, ch 587, as amended by L 1984, ch 11, § 9) to permit rescission or reformation "if the amount in controversy does not exceed $25,000.” Professor Siegel, in his 1980 Practice Commentaries to CCA 213 (McKinney’s Cons Laws of NY, Book 29A [1987 Cum Ann Pocket Part], at 61-62) urges a flexible view toward the determination of the jurisdictional amount — "any supportable finding that the economic value of the case is [$25,000] or less satisfies this requirement.” Here, two of the leases involve long terms with yearly rents of nearly $20,000 and $50,000. Under any reasonable method *806 of valuation the "economic value” of those leases exceeds $25,000.
"Primary jurisdiction”, within the meaning of the cases interpreting CCA 212, is provided by the grant of plenary power in proceedings under RPAPL article 7-A. The court was first give jurisdiction over actions and proceedings under "article seven-a of the real property actions and proceedings law” in 1965. (CCA 204.) That jurisdiction was continued in the 1972 creation of the Housing Part which also has the right to "retain continuing jurisdiction of any action or proceeding relating to a building until all violations of law have been removed”. (CCA 110 [a] [5]; [c].) The broad grant of jurisdiction to this court was an implementation of the legislative finding that "effective enforcement in the city of New York has been hindered by the dispersion of prosecutions, actions and proceedings to compel compliance with housing standards among a number of criminal and civil courts, so that no single court has been able to deal consistently with all of the factual and legal problems presented by the continuing existence of housing violations in any one building.” (L 1972, ch 982, § 1.)
The appointing court is given the power by RPAPL 778 to supervise the conduct of its administrator. For example, the statute uses the term, "with the direction of the court” in several instances to describe the power of the administrator to act. This court has previously determined the rights of an administrator with respect to persons not parties to the original proceeding. (Lawrence v Martin, 131 Misc 2d 256.)
The conclusion that an administrator is subject to the appointing court’s continuing jurisdiction and that the administrator’s acts are subject only to that court’s supervision is consistent with well-established principles. For example, a receiver, a fiduciary quite similar to an article 7-A administrator, has often been held to be "an arm” of the appointing court and subject only to that court’s control. (E.g., Copeland v Salomon, 56 NY2d 222; Bank of Manhattan Trust Co. v Twenty-One Sixty-Six Broadway Corp., 237 App Div 734: Jamaica Sav. Bank v Florizal Realty Corp., 95 Misc 2d 654, 656.) Further, it is not efficient judicial administration to refer the parties to Supreme Court for an interpretation of this court’s order appointing the administrator and a determination of whether this court’s fiduciary is functioning properly.
Since there is uncontested valid service on all interested persons, the court finds that the issues are properly presented here.
*807 THE LEASES TO G & A RESTAURANT AND LIL HEADWEAR
The owner argues that the administrator’s leases to G & A Restaurant and to Lil Headwear, both long-term occupants of the building, were beyond the power of the administrator, improvident, and smacking of impropriety.
Clearly, the execution of the leases was within the power of the administrator. An article 7-A "administrator is authorized and empowered in accordance with the direction of the court * * * to rent or lease for terms not exceeding three years any part of said premises, however, the court may direct the administrator to rent or lease commercial parts of said premises for terms that the court may approve.” (RPAPL 778 [1].) The order of appointment here, at paragraph (6) (d), specifically authorizes the administrator "to rent or lease commercial parts of subject premises for terms not exceeding ten years”. The owner’s objection to the execution of the leases is rejected. If the owner has problems resulting from provisions of the order, the remedy is to seek its amendment or resettlement, not to challenge actions taken by third parties in reliance on it. For example, for an owner concerned about long-term leases, an order can be written to provide that a lease of commercial space for more than five years would require advance approval by the court on notice to the owner.
The standard for the court’s review of challenged acts of the administrator is not discussed in any reported cases. In the ordinary course of events, administrators will enter into a substantial number of commercial contracts as well as leases during the course of their tenure. The Legislature’s intent in enacting RPAPL 778 was not to require prior court approval of each contract or lease, or to permit the owner or other interested party in the article 7-A proceeding to challenge every contract or lease. Persons dealing with administrators must be able to rely upon them in the ordinary course of business dealings without risk of second-guessing by a court years later.
With respect to business decisions of administrators, courts should follow the rule of restrictive review that appears to apply to receivers. That is, leases or contracts "should not be nullified except for grave and sufficient reason.” (Judah v Cold Stream Golf Club Corp., 240 App Div 893, 894.) This court, in the original decision denying the owner’s motion, held that the appointment of an article 7-A administrator is not to protect the owner’s interest, but "[t]he purpose of Article 7-A *808 is for repairs to be completed. The administrator is required to function as a court fiduciary with the statutory goals in mind, not the owner’s interests alone. The appointment of an administrator is a sign that the owner has disregarded its obligations under the law.”
Under that test the moving party has a heavy burden to show not merely that a different business decision could or should have been made by the administrator, but also that there is some actual impropriety. Thus, a lease entered into by the administrator in excess of her powers can be invalidated. (See, at 809, infra.) So, too, can a lease executed as a result of fraud or self-dealing be voided. Here, the order requires specific prior court approval for a lease by the administrator, who is an occupant of the building, with herself or her family.
The application of the "grave and sufficient reason” test to the owner’s allegations concerning Lil Headwear and G & A Restaurant show that they are insufficient.
The owner objects to the lease of the third floor to Lil Headwear for a rent which starts at $1,500 per month with annual escalations as an improvident "sweetheart” deal. The administrator responds that the space rented has fewer windows and is less valuable than the loft on the ninth floor which she has been unable to rent for $2,000 per month; she further argues that a written lease was required to insure commercial stability for the building. The tenant notes that the lease contains the usual commercial terms for the type of space at issue. The court will not second-guess the administrator’s business judgment that the rent was reasonable or that a written lease is appropriate. (See, Judah v Cold Stream Golf Club Corp., supra.)
The G & A Restaurant lease is improper, the owner contends, because in 1983 it had entered into a lease, which is still valid, with the tenant for the same space. The tenant contends that a signed copy of the 1983 lease had never been delivered and, therefore, it never became effective. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506; Beck v New York News, 92 AD2d 823, affd 61 NY2d 620.) There is a factual issue on the question of delivery. The issue of the delivery or nondelivery of the 1983 lease should have been resolved by the owner and the tenant long before the appointment of the administrator in 1985; the instant motion addressed to a valid new lease is simply far too late. The administrator justifies *809 the execution of the lease as a means to obtain the $16,000 arrears owed by the tenant prior to her appointment and as a way to stabilize the building’s income. She further asserts that the owner failed to provide a copy of the prior lease. The owner’s objections to the terms of the administrator’s lease to G & A Restaurant are not "grave and sufficient.”
THE LEASE TO MARY ANTHONY
There was a prior ejectment action between the parties in Supreme Court concerning coverage under Multiple Dwelling Law article 7-C. An order of Justice Danzig in Supreme Court found that lease between the administrator and Mary Anthony to be "valid and binding.” This court originally applied collateral estoppel and denied the owner’s motion to vacate the lease. Subsequently, Justice Danzig granted reargument and determined that the lease was entered into in excess of the administrator’s authority under the order of appointment. The court adheres to its original decision to give collateral estoppel effect to the proceeding before Justice Danzig. (Koch v Consolidated Edison Co., 62 NY2d 548, 554; Gilberg v Barbieri, 53 NY2d 285, 291; Restatement [Second] of Judgments § 27.) Thus, on renewal of the instant motion, the court will invalidate the lease to Mary Anthony on the ground that it was beyond the power of the administrator. If the order of Justice Danzig is modified on appeal this court will reconsider this decision.