*290 OPINION OF THE COURT
Marshall C. Berger, J.
This case raises the issue of whether discrimination in the leasing of commercial space in violation of section 296 (5) (b) of the Executive Law is an affirmative defense to a holdover summary proceeding. Here petitioner is a corporation owned by ethnic Chinese while respondent, a white man, owns a liquor store in premises on the fringes of Chinatown which his family has rented since 1923. Respondent contends that petitioner’s decision not to negotiate a new lease with him at the end of his prior lease was motivated by prejudice in favor of Chinese and other Orientals and against persons of western ancestry. At trial, petitioner objected to questions concerning this contention upon the grounds that this does not constitute an affirmative defense to a holdover proceeding.
Surprisingly, there is little authority on this issue in contrast to the extensive amount of litigation over other discrimination statutes, Federal and State. (There appears to be no Federal statute against discrimination in commercial leasing as opposed to residential leasing. Commercial leasing discrimination is also prohibited by Administrative Code of City of New York, tit 8, ch 1, § 8-107 [5] [b] [1], [2].) The only case directly on point is Grunberg v Owens (App Term, 1st Dept, Mar. 1982, No. 82-243). There a black tenant in a holdover proceeding involving a commercial premises on Columbus Avenue alleged the landlord’s initial refusal to tender a renewal lease and subsequent tender of a lease increasing the rent form $1,300 per month to $6,000 per month was motivated by racial prejudice. Appellate Term reversed the dismissal below based upon that allegation and remanded the case to determine whether the landlord’s offer "was at such an exaggerated rental as to be tantamount to no offer at all or whether that offer reflects the current rental value of the premises.” Before doing so the court stated that a landlord "may not violate supervening statutory proscriptions when dealing with his property.” Thus, that court appears to recognize illegal discrimination as a defense without holding that in so many words.
In that case, the State Division of Human Rights had found probable cause to believe the landlord had engaged in unlawful discrimination. Here in contrast there has been no administrative proceeding whatsoever.
Were illegal discriminatory motivation to be a defense to a *291 holdover proceeding, then holdover proceedings would be significantly less summary than their name implies. Today with the extensive web of Federal and State civil rights statutes and the change in community attitudes towards discrimination of every variety, would-be bigots are more careful not to voice their real discriminatory motivation, than they were in more openly prejudiced times. As a consequence, discriminatory motivation is hard to prove and often can be done only through circumstantial evidence (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180-184 [1978]). On the other hand, such motivation is easy to allege without any factual basis and sometimes is done when the objective circumstances demonstrate them to be absurd (Steinberg v St. Regis/Sheraton Hotel, 583 F Supp 421 [SD NY 1984]).
As this case illustrates, allegations of discrimination, if allowed to be an affirmative defense, may be the only viable defense a tenant has to a holdover proceeding. Consequently, sustaining this defense will on occasion result in injecting the thorny question of a landlord’s motivation into a cut-and-dried case as the only way to stop an otherwise certain eviction and inevitably some of the allegations of discrimination will be frivolous.
But court efficiency is not the only criteria. Viewed from a number of different angles, a court cannot help but recognize illegal discriminatory motivation as a defense. To do otherwise would allow this court’s process to be used to evict a person from his or her place of business because of a landlord’s illegal discrimination. As long ago as 1948 when the only Federal civil rights statutes were holdovers from the Reconstruction period, the United States Supreme Court in Shelley v Kraemer (334 US 1) held that a State court could not enforce a racially restrictive convenant since to do so would constitute a State deprivation of a person’s constitutional right to equal protection of the laws. Such a conclusion would apply to judicial enforcement of bigotry less blatantly evident.
Another leading United States Supreme Court case, Kelly v Kosuga (358 US 516, 520 [1959]), set down the criteria for determining when plaintiff’s alleged violation of another fundamental statutorily recognized public policy, that embodied in the Sherman Act (15 USC §§ 1, 2), would constitute an affirmative defense. Justice Brennan’s opinion, while significantly limiting when such violations would constitute a defense, indicated it would if not to do so would "make the courts a party to the carrying out of one of the restraints *292 forbidden by the Sherman Act” or in another formulation "where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act” (supra, at 520). Evicting a tenant by court order to satisfy a landlord’s illegal discriminatory purposes would constitute a defense under either version of the Kelly criteria.
Similarly relevant is the classic criteria for sustaining the defense of "unclean hands”. "[T]he plaintiff is guilty of immoral, unconscionable conduct * * * 'when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct’ ” (National Distillers & Chem. Corp. v Seyopp Corp., 17 NY2d 12, 15-16 [1966]). Here the allegation is that petitioner is guilty of violating a major State policy embodied in a series of major statutes and that violation is the alleged occasion for petitioner seeking court relief and is specifically aimed at illegally injuring respondent. Respondent can therefore assert the defense of unclean hands as he can assert any equitable defense "to show [the] landlord is not entitled to possession” (Cobert Constr. Corp. v Bassett, 109 Misc 2d 119, 121 [App Term, 1st Dept 1981]).
Even without these analogous authorities, the face of the statute requires the same result. In section 290 of the Executive Law, the State Legislature declares the Human Rights Law to be in fulfillment of the State Constitution’s civil rights provisions and goes on to declare in eloquent language the State’s responsibility to assure equality of opportunity and combat discrimination, prejudice and intolerance and the inequalities they produce and that failure to do so "menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants” (§ 290 [3]). In this, the most pluralistic of States in this the most pluralistic of Nations, such language is not exaggerated. Section 300 of the Executive Law states that the provisions of the Human Rights Law shall be construed liberally for the accomplishment of its purposes (Koerner v State of New York, 62 NY2d 442 [1984]). In light of this manifestly important purpose and the legislatively mandated liberality of interpretation, the statutory ban against discrimination in commercial leasing requires a violation of it in refusing to renew a lease to be a defense against a holdover proceeding at the end of such lease.
Having allowed this defense, however, respondent has failed to prove it. Respondent’s contention is based upon the change *293 over of tenants in the premises since the present landlord bought the building in 1981. At that time, the top two stories of the three-story building were largely devoted to residences and artist studios with tenants including a number of Caucasians as well as an interracial white-black couple and an ethnic Japanese. Today the top stories contain only commercial tenants of Chinese heritage. No discriminatory motive for this change can be found, however, since the landlord was able to get much higher rent from commercial tenants as opposed to residential tenants, regardless of their race. In addition, this changeover brings the premises back in compliance with its certificate of occupancy.
More importantly, no discrimination has been proved in leasing the store space on the first floor including the premises at issue. Petitioner has renewed the lease of one white merchant and is or will be in negotiations for renewal terms for two others. The only white store tenants whose lease it has not offered to renew were a bar and respondent’s liquor store. One of its principals has testified she objects to a liquor store in general and particularly to the clientele of respondent. Thus, petitioner appears to be motivated by a permissible prejudice against alcohol and not an impermissible prejudice against westerners. (Kramarsky v Stahl Mgt., 92 Misc 2d 1030 [Sup Ct, NY County 1977].)
The case is set down for a hearing on stay of the warrant and use and occupancy.